[Crim. No. 6730. Fifth Dist. Jan. 24, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
MARY EMMA GARDNER, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Part I is not published, as it does not meet the standards for publication contained in rule 976(b), California Rules of Court.

## Counsel

Allen R. Crown, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MARTIN, J.**—Appellant was convicted of two counts of misdemeanor vehicular manslaughter (Pen. Code, § 192, subd. (3)(b)) and felony drunk

driving (Veh. Code, § 23101). Appellant admitted a prior conviction of Vehicle Code section 23102, subdivision (a). Appellant was sentenced to state prison for the mitigated term, 16 months. Appellant appeals.

## STATEMENT OF THE FACTS

On June 26, 1981, Leta Roles was the passenger in a 1975 Toyota Celica driven by her boyfriend, Pete Tjalsma. They were on 26 Mile Road leaving the Woodward reservoir in Stanislaus County. The Toyota was being followed by a dark blue Camaro driven by Ms. Roles' friend, Diane Lewis. The two cars left the reservoir at the same time.

A white Pontiac GTO was traveling in front of them, also going southbound, at approximately 15 to 20 miles per hour. The Toyota slowed, attempted to pass, but the Pontiac sped up. Ms. Roles noticed that the persons in the Pontiac were screaming and the driver of the Pontiac, later identified as the appellant, exhibited an extended middle finger in the direction of the Toyota. The Toyota, unable to pass, pulled back in behind the Pontiac. The Pontiac accelerated and pulled far ahead. Later, the Toyota caught up with the Pontiac once again. At this time, the Pontiac was traveling at approximately 35 miles per hour. The Toyota picked up speed, to approximately 50 to 55 miles per hour, and passed the Pontiac. The Pontiac then attempted to pass the Toyota, however, the back end of the Pontiac began to fishtail. The Pontiac came close to hitting the Toyota but then veered to the left, across the road and through a wood fence on the left hand side of the road and rolled onto its side. Ms. Roles estimated the Pontiac was passing the Toyota at a speed of 65 to 70 miles per hour.

Deputy Sheriff Victor Ringsby responded to a radio call and arrived at the scene of the accident. He observed two broken fences, a deceased person laying under the front left wheel of the car, a female in the backseat on the driver's side of the vehicle, identified as the appellant, and the remains of a corpse in the rear seat on the passenger side of the vehicle. An unconscious man was found 20 feet south of the vehicle covered with blood and dirt. Patrol Deputy Hans Bosma identified the victims and took Dallas Scott Frain, a 12-year-old boy, to Doctors Hospital where he received emergency treatment.

Carol Benak, a registered nurse, treated appellant's injuries at approximately 9 p.m. on that night at Oak Valley Hospital. Appellant was brought in by ambulance. Ms. Benak noticed the smell of alcohol about the appellant. Appellant's eyes were glassy, and when asked if she had been drinking appellant responded, "Too much."

California Highway Patrol Officer Arie Kroeze investigated the accident. He made contact with appellant at Oak Valley Hospital and detected the odor of alcohol within two feet of her person. Her eyes appeared red and watery. Appellant admitted driving the Pontiac but did not remember the accident. Officer Kroeze then placed appellant under arrest for felony drunk driving and manslaughter. Officer Kroeze advised appellant of her *Miranda*[2] rights, which she waived. Appellant informed him that she was aware of no mechanical difficulties with the car, that she had no physical defects, she admitted driving after consuming a "couple of beers" and taking two "whites" the day of the accident.

Jerry C. Foster, the man found unconscious 20 feet south of the vehicle, testified that he, together with appellant and now deceased Wayne Brice and Mary Jo Brown, had taken a case of beer and a pint of whiskey to the reservoir that day. Together they consumed three quarters of the alcohol. He testified that appellant appeared to be all right and identified her as the driver of the Pontiac.

*Defense*:

Dallas Scott Frain, son of appellant, recalled the events of June 26, 1981. He remembered a black sports car attempting to pass the Pontiac and that the people in the black car screamed at them. Wayne Brice screamed back and "flipped them off." When the Pontiac attempted to pass the black sports car, the black car sped up. Wayne Brice then grabbed the wheel, jerked it to the right, and appellant grabbed it back. The car began to fishtail. He admitted that he did not mention to the officer at the scene of the accident that Wayne Brice took hold of the steering wheel.

*Rebuttal*:

Mick MacKinnon, an employee of the Stanislaus County Welfare Department, testified regarding the content of a conversation with Dallas in May of 1982 in which the minor recounted the events of June 26, 1981. At that time Dallas claimed that the excessive speed of the Pontiac caused the accident. During that conversation, Dallas did not claim that anyone had taken hold of the steering wheel.

DISCUSSION

I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

*See footnote 1, *ante,* page 134.

## II. WHETHER APPELLANT WAS IMPROPERLY SENTENCED DUE TO PRIVILEGED CONFIDENTIAL INFORMATION CONTAINED IN THE PROBATION REPORT.[3]

Appellant complains that confidential information received from Emanuel Mental Health Wing regarding appellant was improperly placed in the probation report and resulted in a denial of probation and an improper sentence to state prison.

At the sentencing hearing, defense counsel questioned the propriety of the placement of information from appellant's medical record in the probation report citing section 5328 of the Welfare and Institutions Code.[4] The probation officer responded that his office simply requested and subsequently received the information and that it was unknown whether or not appellant had given a written consent to release of the information. The court indicated that had any impropriety occurred, such impropriety was on the part of the hospital rather than the probation office. In light of that conclusion, defense counsel submitted the complete hospital record into evidence in order that the court might put the already provided material into context.

The pertinent language of section 5328 is as follows: "All information and records obtained in the course of providing services . . . to either voluntary or involuntary recipients of services shall be confidential. . . . Information and records may be disclosed only in any of the following cases: . . .

"(f) To the courts, as necessary to the administration of justice . . . .

". . . . . . . . . . . . . . . . . . . . . . .

"(k) Upon written agreement by a person previously confined in or otherwise treated by a facility, the professional person in charge of the facility or his or her designee may release any information, except information which has been given in confidence by members of the person's family, requested by a probation officer charged with the evaluation of the person after his or her conviction of a crime if the professional person in charge of the facility determines that such information is relevant to the evaluation. Such agreement shall only be operative until sentence is passed on the crime of which the person was convicted. The confidential information released pursuant to this subdivision shall be transmitted to the court separately from

---

[3]See footnote 1, *ante,* page 134.

[4]Hereafter, all statutory references are to the Welfare and Institutions Code unless otherwise specified.

the probation report and shall not be placed in a probation report. The confidential information shall remain confidential except for purposes of sentencing. After sentencing, the confidential information shall be sealed."

█ This portion of the Lanterman-Petris-Short Act is a general prohibition against disclosure of information, subject to defined exceptions. The confidentiality imposed by this act goes beyond matter which is protected by any of the privileges established in the Evidence Code. (*In re S. W.* (1978) 79 Cal.App.3d 719, 721 [145 Cal.Rptr. 143].)

█ It is apparent that the Legislature intended that section 5328 be strictly construed by its enactment in 1969 of subdivision (g) permitting release of information only under limited circumstances to limited government agencies. █ Section 5328 prohibits disclosure of information about patients when the inquiry is by a probation officer concerning a present presentence or probation report which his office is preparing for the courts. (53 Ops.Cal.Atty.Gen. 151, 156 (1970).)

█ *County of Riverside* v. *Superior Court* (1974) 42 Cal.App.3d 478 [116 Cal.Rptr. 886], a case relied on both by the appellant and the respondent, held that records subject to the confidentiality provisions of section 5328 were not to be disclosed to the State Board of Chiropractic Examiners in relation to an accusation seeking the suspension or revocation of a chiropractor's license. The court stated at page 481:

"State Board concedes, as it must, that there is no specifically enumerated exception permitting disclosure to it or other administrative agencies. (Cf. 54 Ops.Cal.Atty.Gen. 24, at pp. 24, 29-30.) State Board contends, however, that disclosure to it may be achieved indirectly under subdivision (f) of section 5328: 'Information and records may be disclosed only: . . . (f) To the courts, as necessary to the administration of justice.' (See 54 Ops.Cal.Atty.Gen., *supra,* at pp. 30-31.) This contention cannot be sustained.

"In the first place, the plain language of the, exception to confidentiality contained in subdivision (f) of section 5328 says that information and records may be disclosed *to the courts,* not to an administrative agency *through the courts.* In our view, the subdivision contemplates use of the information or records 'as necessary to the administration of justice' in some pending judicial action or proceeding. . . .

"Secondly, in section 5328 and succeeding sections the Legislature has specifically provided for disclosure to certain persons or agencies under certain circumstances. Had the Legislature intended to permit disclosure to

administrative agencies such as State Board it would doubtless have included a specific authorization for such disclosure. (See, e.g., § 5328.2 added by Stats. 1970, ch. 1627, p. 3447, § 225, amended by Stats. 1972, ch. 1377, p. 2857, § 121.) 'Under the familiar maxim of *expressio unius est exclusio alterius* it is well settled that, when a statute expresses certain exceptions to a general rule, other exceptions are necessarily excluded.' [Citations.]

"Last, one of the legislative purposes in providing for confidentiality was undoubtedly to encourage persons with mental or alcoholic problems to seek treatment on a voluntary basis. (See § 5001, subds. (a), (b) and (f); *Thorn* v. *Superior Court,* 1 Cal.3d 666, 668 . . . .) To construe the limited exception contained in subdivision (f) of section 5328 as permitting disclosure to any person or agency whenever a court determined it was 'necessary to the administration of justice' would tend to nullify the broad legislative provision for confidentiality and would tend to stultify the legislative purpose." The respondent relies on the language of subdivision (f) which excepts the necessary court use of such records and information from the general prohibition of section 5328. However, subdivision (k) specifically prohibits the release of this information "requested by a probation officer charged with the evaluation of the person after his or her conviction of a crime" absent written agreement by the patient.

Next, respondent asserts that even if the inclusion of the information in the probation report were a violation of confidentiality, the court correctly ruled that the probation officer had not acted improperly. Respondent claims that if the hospital did violate appellant's right to confidentiality, it was through no wrongdoing on the part of the probation department or the court. However, this argument does not reach the underlying issue. It is not the purpose of this court to punish the probation officer but to uphold the statute and honor the confidential nature of appellant's medical records.

■ As in other privileges for confidential communications, the physician-patient privilege precludes a court disclosure of a communication, even though there has been an accidental or unauthorized out-of-court disclosure of such communication. Thus, an eavesdropper or other interceptor is not allowed to testify to an overheard or intercepted communication, otherwise privileged from disclosure, because it was intended to be confidential. (2 Jefferson, Evidence Benchbook (2d ed. 1982) § 37.1, pp. 1358-1359.) ■ Subdivision (f) of section 5328 does not authorize the court to order disclosure of matter which the Evidence Code makes privileged. (*In re S. W., supra,* 79 Cal.App.3d 719, 722.)

■ We conclude that the trial court erred in permitting the confidential information to remain a part of the probation report. The fact that the pro-

bation officer did not know whether appellant consented to the release is irrelevant. ■ Once the holder has claimed the privilege, as in this case, the burden shifts to the party attacking the privilege to prove that the communication was not confidential. (Evid. Code, § 917.)

■ However, this error does not necessitate a remand for purposes of sentencing as the confidential medical records were not the basis for the court's denial of appellant's request for probation. The court found that this was not an appropriate case for a grant of probation because of the "seriousness of the incident, the fact that two lives were taken and two others were severely injured." Reciting that defendant had, only two months before, been convicted of driving under the influence of intoxicating liquor, under the circumstances, the lower court ordered that probation be denied. The sentencing court never referred in any manner to the confidential medical records and obviously did not consider this information in denying probation. At best, and in light of the entire sentencing record, it would appear the trial court may have considered the illicit material in imposing the mitigated term rather than a harsher sentence. There was no prejudice to appellant. (See Cal. Rules of Court, rule 414(d)(4).)

The judgment is affirmed.

Zenovich, J., concurred.

**FRANSON, Acting P. J.**—I concur in the affirmance of the judgment. However, in my opinion, the trial court erred in not granting appellant's challenge for cause of juror Howard. At the outset of his voir dire, Mr. Howard stated that he was a friend of California Highway Patrol Officer Kroeze and that he would have no reason to disbelieve the officer's testimony—in fact he would have "a tendency to believe his testimony." Mr. Howard explained that he would use a different standard of credibility as to Officer Kroeze than he would apply to other witnesses. Finally, Howard said that he would not want to be a defendant in a case where 12 jurors were similarly acquainted with Officer Kroeze. What more is needed under the law to prove bias and disqualification of a person to sit as an *impartial* juror?

At this point, appellant's challenge for cause should have been honored without further comment by the court or opposing counsel. Every juror who admits an original bias usually can be rehabilitated by adroit questioning by opposing counsel and the court—all of which is mere window dressing, i.e., an attempt by the juror to cover up the originally revealed bias.

Nevertheless, because Officer Kroeze's testimony was not contradicted, i.e., his credibility was unimpeached, the denial of appellant's challenge to juror Howard was harmless.

I find no merit in appellant's contention that she was unduly restricted in questioning Mr. Howard.

Nor do I find any merit in appellant's contention that she was prejudiced by the trial court's refusal to grant an additional peremptory challenge to replace her 10th peremptory challenge which was used to excuse Mr. Howard. There is nothing in the record to show that appellant was not tried by 12 impartial jurors.