[No. F008197. Fifth Dist. June 30, 1987.]

WILMA J. GILBERT et al., Petitioners, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
DEPARTMENT OF SOCIAL SERVICES et al., Real Parties in
Interest.

**COUNSEL**

K. B. Howard for Petitioners.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Charlton Holland, Assistant Attorney General, Elisabeth C. Brandt and Carol P. Wallacker, Deputy Attorneys General, Rodolfo Montejano, Ralph C. Quiroz, Musick, Peeler & Garrett and Wm. Clark Stanton for Real Parties in Interest.

**OPINION**

**BROWN (G. A.), P. J.—**

STATEMENT OF THE CASE AND FACTS

Petitioners, Wilma J. and Daniel Gilbert, filed this petition seeking an order requiring the Superior Court of Tulare County to compel the Kern

Regional Center (KRC) and the Regional Center of Orange County, Inc. (RCOC) to obey subpoenas duces tecum requiring those centers to produce for inspection and copying by petitioners' attorney certain confidential patient records protected by Welfare and Institutions Code sections 5328 and/or 4514.

Since August 1981 petitioners have operated a community care facility in Tulare County for developmentally disabled youths, classified as a small family home, under a license granted by the Department of Social Services (DSS). Between 1981 and the summer of 1986 a number of developmentally disabled youths have been placed in petitioners' home by as many as five different regional centers in the state.[1]

On July 15, 1986, DSS filed an accusation against petitioners seeking the revocation of their license based upon the violation of listed statutes and regulations and alleging mistreatment of seven patients. The patients were referred to by number. A hearing was scheduled for January 26, 1987, under the Administrative Procedure Act (APA) (Gov. Code, § 11500 et seq.).

On December 8 and 22, 1986, petitioners obtained several subpoenas duces tecum from the administrative hearing officer pursuant to Government Code section 11510, directed to the KRC and to the RCOC, which regional centers are custodians of confidential records of patients referred to in the accusation who petitioners claim were former patients in petitioners' facility. The records sought comprise substantially the totality of information on these patients relating to two patients under the former jurisdiction of the KRC and one under the former jurisdiction of the RCOC.[2]

The subpoenas ordered the records to be produced at the offices of the regional centers on January 5 for inspection and copying by counsel for petitioners. Counsel stated he needs these records for possible impeachment of complaining witnesses and for use relative to the issue of mitigation of penalty.[3]

---

[1] Regional centers are private, nonprofit corporations which, pursuant to contracts with the state, are responsible for providing or arranging for services for developmentally disabled persons and their families. (Welf. & Inst. Code, § 4620 et seq.) The regional center for the geographic area in which the petitioners' operate their home is the Central Valley Regional Center (CVRC).

[2] The subpoena duces tecum actually asks for records of 12 patients. However, the petition for mandate prays for the records of three patients, two formerly in KRC and one formerly in RCOC. The mandate proceeding also names the DSS, and the DSS was served with the petition. The subpoenas duces tecum were not directed to DSS.

[3] The subpoena seeks the records for the time the patients were at petitioners' facility to the present. Apparently when a patient is transferred to another regional center the records from the beginning follow that patient.

KRC and RCOC advised petitioners' counsel that the records are confidential under the provisions of Welfare and Institutions Code sections 5328 and 4514 and they would not be produced. The DSS refused to assist in obtaining compliance.

Petitioners thereupon filed a petition for a writ of mandate in the Superior Court of Tulare County to compel compliance with the subpoenas. The court denied the petition. This petition followed.

Petitioners concede they have received the records from regional centers other than KRC and RCOC pertaining to patients who were as of that time in facilities under their jurisdiction.

### DISCUSSION

The ultimate issue herein is whether Welfare and Institutions Code sections 5328 and/or 4514, pertaining to the confidentiality of the records of mentally ill and developmentally disabled persons, establish an absolute privilege, subject only to the legislative exceptions listed under those sections, or if due process considerations require the production of the records for use by a party to an administrative license revocation proceeding. Before reaching that question, however, it is essential that we discuss various procedural irregularities faced by petitioners.

Government Code section 11507.5[4] makes the procedure set forth in Government Code section 11507.6 the "exclusive right to and method of discovery." Section 11507.6 sets forth in considerable detail the discovery procedure to be followed under the APA, including time limits dating from the filing of the petition. Government Code section 11507.7 sets forth with particularity the procedure for enforcing discovery by application to the appropriate court.

These sections not only prescribe time limits but provide for discovery as to parties only. In the instant case, the time limits were not complied with and the statute, in any event, would be inapplicable as the subpoenas duces tecum were served on KRC and RCOC, which are not parties to the administrative proceeding.

For these and possibly other reasons, petitioners concede they are not proceeding under this statute but under Government Code section

---

[4]Government Code section 11507.5 provides: "The provisions of Section 11507.6 provide the exclusive right to and method of discovery as to any proceeding governed by this chapter."

11510.[5] However, on its face, section 11510 is not a discovery statute but one to compel the production of documents and witnesses at the hearing. In this instance, however, petitioners sought by the subpoenas duces tecum to compel the production of documents at the place of business of the regional centers for inspection and copying by petitioners' attorney on January 5, some 21 days before the hearing. Obviously, petitioners were seeking to discover what, if anything, in the records would be of help at the trial; thus, the effort was really one of discovery of what was in the records. Such discovery does not come within the provisions of section 11510. (*Shively* v. *Stewart* (1966) 65 Cal.2d 475, 478-479 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431].) The *Shively* court expressly noted that section 11510 was intended to secure the attendance of witnesses and the production of evidence at trial and not to permit prehearing discovery.

It is true that *Shively* decided that, in the absence of a discovery statute applicable to administrative proceedings, the court had the authority to authorize the limited use of the subpoena duces tecum and depositions for discovery purposes. The court stated: "The Legislature's silence with respect to prehearing discovery in administrative proceedings does not mean, however, that it has rejected such discovery. Instead, as in the case of criminal discovery (see *Jones* v. *Superior Court,* 58 Cal.2d 56, 58 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], and cases cited), it has left to the courts the question whether modern concepts of administrative adjudication call for common law rules to permit and regulate the use of the agencies' subpoena power to secure prehearing discovery." (*Id.,* at p. 479.)

However, the comprehensive exclusive discovery statutes in administrative proceedings (Gov. Code, §§ 11507.5-11507.7) were enacted by the Legislature in 1968, thereby supplanting the *Shively* court's holding. Subsequent cases have held that the discovery statute is exclusive. (*Board of Medical Quality Assur.* v. *Superior Court* (1977) 73 Cal.App.3d 860, 862 [141 Cal.Rptr. 83]; *Cooper* v. *Board of Medical Examiners* (1975) 49 Cal.App.3d 931, 945 [123 Cal.Rptr. 563].)

Because petitioners are not proceeding in accordance with the exclusive discovery procedures of Government Code section 11507.5 et seq., and because Government Code section 11510 is not a discovery statute, petition-

---

[5]Government Code section 11510 provides in pertinent part: "(a) Before the hearing has commenced, the agency or the assigned administrative law judge shall issue subpoenas and subpoenas duces tecum at the request of any party for attendance or production of documents *at the hearing*. Subpoenas and subpoenas duces tecum shall be issued in accordance with Sections 1985, 1985.1, and 1985.2 of the Code of Civil Procedure. After the hearing has commenced, the agency itself hearing a case or an administrative law judge sitting alone may issue subpoenas and subpoenas duces tecum." (Italics added.)

ers' effort to convert the latter statute into a discovery statute must fail. Accordingly, the petition could be denied out of hand on that ground.

However, on remand it is probable that petitioners will subpoena the same records for production on the new hearing date, in which event it is likely the trial court will be confronted with the issues of whether petitioners have standing to petition the superior court for mandate and the question of whether Welfare and Institutions Code section 4514 precludes the court from ordering production of the records of the regional centers for use in the underlying administrative proceeding.

■ The DSS and the regional centers contend that, pursuant to Government Code section 11525,[6] only the agency can petition the superior court to seek enforcement of a subpoena. In this instance, the DSS refused to assist petitioners in obtaining review. The section states: "the agency shall certify the facts to the superior court." We believe that petitioners could petition the superior court to enforce the agency's mandatory duty or, as petitioners did in this case, take the shortcut of petitioning the court when the DSS refused. Otherwise, in every case, should an agency refuse to perform its duty, the other party to the proceeding would be precluded from obtaining judicial review of the issue or issues before the agency. Such a result could not be consonant with the legislative intent.

We now turn to the provisions of Welfare and Institutions Code section 4514 in relation to petitioners' right to obtain production of records protected by that section in an administrative license revocation proceeding. That section in pertinent part provides: "All information and records obtained in the course of providing intake, assessment, and services under Division 4.1 (commencing with Section 4400), Division 4.5 (commencing with Section 4500), Division 6 (commencing with Section 6000), or Division 7 (commencing with Section 7100) to persons with developmental disabilities shall be confidential. Information and records obtained in the course of providing similar services to either voluntary or involuntary recipients prior to 1969

---

[6]Government Code section 11525 provides: "If any person in proceedings before an agency disobeys or resists any lawful order or refuses to respond to a subpena, or refuses to take the oath or affirmation as a witness or thereafter refuses to be examined, or is guilty of misconduct during a hearing or so near the place thereof as to obstruct the proceeding, *the agency shall certify the facts* to the superior court in and for the county where the proceedings are held. The court shall thereupon issue an order directing the person to appear before the court and show cause why he should not be punished as for contempt. The order and a copy of the certified statement shall be served on the person. Thereafter the court shall have jurisdiction of the matter. The same proceedings shall be had, the same penalties may be imposed and the person charged may purge himself of the contempt in the same way, as in the case of a person who has committed a contempt in the trial of a civil action before a superior court." (Italics added.)

shall also be confidential. Information and records shall be disclosed only in any of the following cases:

"......................

"(f) To the courts, as necessary to the administration of justice.

"......................

"(n) To authorized licensing personnel who are employed by, or who are authorized representatives of, the State Department of Health Services, and who are licensed or registered health professionals, and to authorized legal staff or special investigators who are peace officers who are employed by, or who are authorized representatives of, the State Department of Social Services, as necessary to the performance of their duties to inspect, license, and investigate health facilities and community care facilities, and to ensure that the standards of care and services provided in such facilities are adequate and appropriate and to ascertain compliance with the rules and regulations to which the facility is subject. The confidential information shall remain confidential except for purposes of inspection, licensing, or investigation pursuant to Chapter 2 (commencing with Section 1250) of, and Chapter 3 (commencing with Section 1500) of, Division 2 of the Health and Safety Code, or a criminal, civil, or administrative proceeding in relation thereto. The confidential information may be used by the State Department of Health Services or the State Department of Social Services in a criminal, civil, or administrative proceeding. The confidential information shall be available only to the judge or hearing officer and to the parties to the case. Names which are confidential shall be listed in attachments separate to the general pleadings. The confidential information shall be sealed after the conclusion of the criminal, civil, or administrative hearings, and shall not subsequently be released except in accordance with this subdivision. If the confidential information does not result in a criminal, civil, or administrative proceeding, it shall be sealed after the State Department of Health Services or the State Department of Social Services decides that no further action will be taken in the matter of suspected licensing violations. Except as otherwise provided in this subdivision, confidential information in the possession of the State Department of Health Services or the State Department of Social Services shall not contain the name of the person with a developmental disability."

Welfare and Institutions Code section 4514 was enacted by the Legislature in 1982 (Stats. 1982, ch. 1141). Previously the same level and coverage of confidentiality was afforded by Welfare and Institutions Code section 5328 which, as originally enacted (Stats. 1967, ch. 1667), applied to treat-

ment information and records for both mentally and developmentally disabled persons. Now section 4514 applies only to developmentally disabled persons, while Welfare and Institutions Code section 5328 protects the mentally disabled from unwarranted disclosure of confidential treatment information and records. Subdivision (f) of section 5328 contains identical language to that found in subdivision (f) of section 4514, and Welfare and Institutions Code section 5328.15 is identical to section 4514, subdivision (n). Therefore, reported cases construing pertinent provisions in section 5328 are applicable to a construction of section 4514.

■ Our first task is to determine if, as a matter of statutory interpretation, the Legislature intended that the records referred to be absolutely confidential except for the specifically listed cases set forth in the several subdivisions of the statute. It appears the Legislature intended precisely that result.

The statute uses the mandatory language "shall be confidential" and "shall be disclosed only in any of the following cases."

It has been held that the nondisclosure provision of section 5328 is a general prohibition against disclosure subject to certain exceptions, and the prohibition operates independently of any of the privileges established by the Evidence Code. (*In re S. W.* (1978) 79 Cal.App.3d 719, 721 [145 Cal.Rptr. 143]; *Boling* v. *Superior Court* (1980) 105 Cal.App.3d 430, 443 [164 Cal.Rptr. 432].)

*County of Riverside* v. *Superior Court* (1974) 42 Cal.App.3d 478 [116 Cal.Rptr. 886] was a proceeding to revoke the license of a chiropractor undertaken by the State Board of Chiropractic Examiners. In the administrative proceeding the board sought records at a treatment center relating to the alleged alcoholism of the chiropractor. The Court of Appeal (per Kaufman, J.) held that the trial court order directing delivery of the records to the board was invalid because the case did not fall within any of the specific exceptions set forth in the statute. The court stated: "[I]n section 5328 and succeeding sections the Legislature has specifically provided for disclosure to certain persons or agencies under certain circumstances. Had the Legislature intended to permit disclosure to administrative agencies such as State Board it would doubtless have included a specific authorization for such disclosure. (See, e.g., § 5328.2 added by Stats. 1970, ch. 1627, p. 3447, § 22.5, amended by Stats. 1972, ch. 1377, p. 2857, § 121.) ■ 'Under the familiar maxim of *expressio unius est exclusio alterius* it is well settled that, when a statute expresses certain exceptions to a general rule, other exceptions are necessarily excluded.' [Citations.]" (*Id.,* at p. 481.)

In *People* v. *Gardner* (1984) 151 Cal.App.3d 134[198 Cal.Rptr. 452], the court instructed: "It is apparent that the Legislature intended that section 5328 be strictly construed by its enactment in 1969 of subdivision (g) permitting release of information only under limited circumstances to limited government agencies. Section 5328 prohibits disclosure of information about patients when the inquiry is by a probation officer concerning a present presentence or probation report which his office is preparing for the courts. [Citation.]" (*Id.,* at p. 140.)

The court reasoned that the Legislature (as of that time) had established no such exception to the general mandatory confidentiality of the records.

Opinions of the Attorney General have uniformly arrived at the same conclusion. (See 53 Ops.Cal.Atty.Gen. 20 (1970); 53 Ops.Cal.Atty.Gen. 151 (1970); 59 Ops.Cal.Atty.Gen. 186 (1976).)

■ Petitioners argue that the records of the regional centers should be made available pursuant to one or both of the legislative exceptions set forth in Welfare and Institutions Code section 4514, subdivisions (f) and (n), and, if those sections do not authorize access to the records, they are denied procedural due process.

Subdivision (f) of section 4514 authorizes the records to be made available "[t]o the courts, as necessary to the administration of justice." *County of Riverside* v. *Superior Court, supra,* 42 Cal.App.3d 478 expressly held that this exception does not authorize the superior court in a mandate proceeding to order that records be made available to an administrative body. The court explained: "In the first place, the plain language of the exception to confidentiality contained in subdivision (f) of section 5328 says that information and records may be disclosed *to the courts,* not to an administrative agency *through the courts.* In our view, the subdivision contemplates use of the information or records 'as necessary to the administration of justice' in some pending judicial action or proceeding. In the case at bench there is no judicial action or proceeding pending in which the use of information or records is 'necessary to the administration of justice.' " (*Id.,* at p. 481.)

Subdivision (n) of section 4514 (*ante,* pp. 167-168) was construed in the instant case by the trial court to deny petitioners access to the records. The court explained: "I do not agree with petitioner's interpretation of W&I Code sections 4514 and 5328.15(a). These sections, in my opinion, may not be interpreted to allow an administrative law judge or hearing officer, or a party to an administrative proceeding blanket access to confidential records.

"It is my interpretation of the above sections that they allow release of confidential information to authorized personnel of the department. If the

department then brings an administrative proceeding and uses the information therein, the information can be made available to the judge and the parties to the proceeding and to no one else.

"In my view, it was the legislative intent to protect the confidentiality of the records except in very specific circumstances, and I must give effect to that legislative purpose.

"Of course, there is an element of unfairness in depriving petitioner of possibly valuable evidence. But this occurs whenever the law upholds the sanctity of a privilege. I am not persuaded that the right of petitioner to have access to evidence must override the confidentiality requirements as a matter of due process.

"I am aware that my interpretation of the law opens up the possibility that department personnel can be selective in what confidential information they may seek, and thereby prevent possible exculpatory material from being available to the other side. There is no evidence to suggest, however, that any such mischief occurred in the present case.

"The petition is denied."

The DSS states, and the assertion is not disputed, that the DSS furnished to petitioners all of the records upon which the DSS relied in preparing the accusation and that in this regard the records from KRC and RCOC were not examined or utilized.

Subdivision (n) of section 4514 authorizes access to the records by licensing personnel authorized by the DSS and other specifically enumerated staff persons "as necessary to the performance of their duties ... to ensure that the standards of care and services provided in such facilities are adequate and appropriate and to ascertain compliance with the rules and regulations to which the facility is subject." The section specifically provides that "[t]he confidential information shall remain confidential except for purposes of inspection, licensing, or investigation ... or a criminal, civil, or administrative proceeding in relation thereto." Immediately following that language, the section states "[t]he confidential information may be used by the State Department of Health Services or the State Department of Social Services in a criminal, civil, or administrative proceeding. The confidential information shall be available only to the judge or hearing officer and to the parties to the case." Plainly this section authorizes the delivery of the records to the DSS and its authorized personnel only; and the DSS in turn, if it uses the information, is required to turn the material over to the judge or hearing officer and to the parties to the case. In context it would strain and distort

the legislative intent to interpret this provision as permitting the parties other than the DSS and its personnel to inspect the records or to use them initially in a criminal, civil or administrative proceeding in relation to licensing and inspecting of health facilities.

Supportive of this position is the Legislative Counsel's Digest of Assembly Bill No. 1751 (1985-1986 Reg. Sess.) regarding the 1985 amendment to Welfare and Institutions Code sections 4514 and 5328.15, which states: "Existing law provides that all information and records obtained in the course of providing certain services to persons with developmental disabilities or in the course of providing mental health services to voluntary or involuntary recipients of those services is confidential and cannot be released, with specified exceptions. One exception permits the release of confidential information and records to specified licensing personnel working for the State Department of Health Services as necessary for the performance of their duties to inspect, license, and investigate health facilities. The department may use the confidential information in a criminal, civil, or administrative proceeding.

"This bill would similarly permit the release of these confidential records and information to specified legal staff or special investigators working for the State Department of Social Services as necessary for the performance of their duties to inspect, license, and investigate community care facilities. This bill would also permit the State Department of Social Services to use the confidential information in a criminal, civil, or administrative proceeding." (See Legis. Counsel's Dig., Assem. Bill No. 1751, Stats. 1985, ch. 994, No. 9, West's Cal. Legis. Service, pp. 525-526; No. 5 Deering's Adv. Legis. Service, p. 484.)

Petitioners' remaining argument is that these records may contain information which will enable them to impeach patient witnesses and information which may be relevant on the issue of mitigation of penalty. Petitioners contend that to deprive them of this information permits the DSS to control the evidence that may be presented and deprives them of due process and a fair trial. They argue that, at a minimum, the court should follow the model decreed in certain criminal cases by requiring the regional centers to produce the records in court for an in camera inspection by the judge who could determine what part of the records, if any, may be utilized in the administrative hearing. Petitioners primarily cite and rely upon *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 [94 L.Ed.2d 40, 107 S.Ct. 989], *People v. Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622], *People v. Reber* (1986) 177 Cal.App.3d 523 [223 Cal.Rptr. 139], and *Hammarley v. Superior Court* (1979) 89 Cal.App.3d 388 [153 Cal.Rptr. 608].

Initially, it must be noted that none of these cases involved Welfare and Institutions Code section 4514 or 5328. Also important is the fact that the cases involving the in camera procedure are criminal cases invoking liberty interests in a pending court proceeding—not a license revocation proceeding pending before an administrative body. The interest of a criminal defendant in his liberty is a fundamental interest. While an Evidence Code privilege (such as the psychotherapist-patient privilege) may be required to yield to the criminal defendant's right to confrontation and cross-examination (see *People* v. *Reber, supra,* 177 Cal.App.3d 523), the right or interest of petitioners in this matter is a license to operate a community care facility for youthful developmentally disabled clients. This is not a liberty interest comparable to that of a criminal defendant. Further, it is not a "common occupation," but is a highly regulated endeavor which invokes an intimate relationship with the public welfare. Petitioners do not have a "fundamental right" to pursue such an occupation. (*Hardy* v. *Stumpf* (1978) 21 Cal.3d 1 [145 Cal.Rptr. 176, 576 P.2d 1342].)

■ A number of California cases relating to license revocation proceedings have rejected the notion that a state regulatory board must conduct its proceedings for revocation of a license in accordance with theories developed in the criminal law. In *Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347 [185 Cal.Rptr. 453, 650 P.2d 328], the Supreme Court points out that the due process requirements in criminal cases differ from those applicable in administrative proceedings. The court states: "The due process clauses of both the state and federal Constitutions protect the right to employment from arbitrary state interference. [Citations.] However, the state has a strong interest in regulating the licensed professions and clearly may discipline individuals employed in those fields. [Citations.] Due process mandates do not necessarily require that the exacting rules of procedure employed in the criminal courts be applied to license revocation procedures. '[T]he overwhelming weight of authority has rejected any analogy which would require [an administrative] board to conduct its proceedings for the revocation of a license in accordance with theories developed in the field of criminal law. [Citations.]' [Citation.]" (*Id.,* at p. 367, fn. 12.) (See *Webster* v. *Board of Dental Examiners* (1941) 17 Cal.2d 534, 538 [110 P.2d 992]; *Gore* v. *Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184, 198 [167 Cal.Rptr. 881]; *Camacho* v. *Youde* (1979) 95 Cal.App.3d 161, 164 [157 Cal.Rptr. 26].)

In determining applicable due process safeguards, it must be remembered that "due process is flexible and calls for such procedural protections as the particular situation demands." (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593]; see also *People* v. *Ramirez* (1979) 25 Cal.3d 260, 268 [158 Cal.Rptr. 316, 599 P.2d 622].) Again, in *Blinder,*

*Robinson & Co.* v. *Tom* (1986) 181 Cal.App.3d 283, 289 [226 Cal.Rptr. 339], the court instructs: "The precise procedural formalities required by due process are undefinable and vary according to the factual context. '[P]rocedural due process in the administrative setting does not always require application of the judicial model.' [Citation.]"

*Blinder* is instructive with respect to the application of due process in an administrative setting. In that case the Commissioner of Corporations filed an accusation before the Department of Corporations against Blinder and associates (Blinder) seeking to revoke Blinder's broker-dealer certificate. Pursuant to Government Code section 11511,[7] Blinder sought an order from the commission for the taking of the depositions of three out-of-state witnesses who Blinder contended would give testimony relevant to the issue of whether any sanctions would be appropriate and, if so, what those sanctions would be. The commission denied the petition for the subpoenas. Blinder sought mandate in the superior court. The petition for writ of mandate was denied as to the three witnesses. The Court of Appeal affirmed, rejecting petitioners' contention "that Government Code section 11511 was unconstitutionally applied because the same person, senior corporation counsel George Crawford, filed and prosecuted the accusation against [Blinder], claimed to exercise discretion under Government Code section 11511 and refused to petition the appropriate court for an order to take the requested out-of-state depositions on the ground that the testimony would be immaterial. Second it contends that a procedurally fair system cannot vest prosecuting attorneys with the discretion to make rulings on the relevance of the evidence of their adversaries. Yet, [Blinder] claims that is exactly what has occurred in this case." (*Id.,* at p. 291.) Blinder argued the procedure was unconstitutional on its face and was violative of its due process rights. In a lengthy decision, the court rejected the notion that petitioner's due process rights were violated.

Similarly, in the instant case the fact the DSS, under Welfare and Institutions Code section 4514, subdivision (n), can, to a limited degree, control the evidence that may be presented in the case does not violate petitioners' due process rights.

---

[7]Government Code section 11511 provides: "On verified petition of any party, an agency may order that the testimony of any material witness residing within or without the State be taken by deposition in the manner prescribed by law for depositions in civil actions. The petition shall set forth the nature of the pending proceeding; the name and address of the witness whose testimony is desired; a showing of the materiality of his testimony; a showing that the witness will be unable or can not be compelled to attend; and shall request an order requiring the witness to appear and testify before an officer named in the petition for that purpose. Where the witness resides outside the State and where the agency has ordered the taking of his testimony by deposition, the agency shall obtain an order of court to that effect by filing a petition therefor in the superior court in Sacramento County. The proceedings thereon shall be in accordance with the provisions of Section 11189 of the Government Code."

In *Blinder* the court further rejected Blinder's contention that the denial violated his due process rights by preventing Blinder from presenting evidence. The court treated the matter as one of whether there was substantial evidence to support the trial court's determination that the showing made by Blinder regarding the evidence to be elicited was not sufficiently material to affect the outcome of the case.

The safety, welfare and protection of persons in community care facilities is a most compelling interest. (*Habrun* v. *Department of Social Services* (1983) 145 Cal.App.3d 318, 322 [193 Cal.Rptr. 340].) The government's interest in protecting the welfare of such persons from incompetent, abusive or unqualified licensees must prevail against the licensee's interest in being able to continue to engage in the operation of the community care facility. The Legislature has balanced these interests and imposed discovery limitations set forth in Government Code section 11507.5 et seq. and disclosure limitations contained in Welfare and Institutions Code section 4514 as a part of the Legislature's effort to reconcile all of the interests involved. To the extent the department uses confidential information from regional centers' records in administrative license revocation proceedings, the statutes require disclosure of that information to the parties against whom the information is used. Beyond that, the state's interest in maintaining confidentiality outweighs any right a licensee may have to require a court to review the records for the purpose of determining if there may be something helpful in them. We see nothing arbitrary or fundamentally unfair in the legislative balance that has been struck among competing interests.

Petitioners' reliance upon the recent United States Supreme Court case of *Pennsylvania* v. *Ritchie, supra,* 480 U.S. 39 [94 L.Ed.2d 40, 107 S.Ct. 989] is misplaced. In that criminal case the defendant had been convicted of sexual abuse of his 13-year-old daughter. He sought and was denied access to his daughter's welfare department file prior to trial. The Supreme Court held the defendant's constitutional rights would be satisfied by an in camera proceeding conducted by the trial court to determine whether the file contained information that probably would have changed the outcome of the trial.

In addition to being a criminal case, it is to be noted that the Pennsylvania statute made the records confidential subject to 11 exceptions, one of which was that the agency may disclose the reports to a " 'court of competent jurisdiction pursuant to a court order.' " (*Pennsylvania* v. *Ritchie, supra,* 480 U.S. at p. 44 [94 L.Ed.2d at p. 49, 107 S.Ct. at p. 995].) The court observed: "This is not a case where a state statute grants CYS [the agency] the absolute authority to shield its files from all eyes. [Citation . . . .] Rather, the Pennsylvania law provides that the information shall be disclosed in

certain circumstances, including when [the agency] is directed to do so by court order. [Citation.] Given that the Pennsylvania Legislature contemplated *some* use of [the agency] records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions. In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is 'material' to the defense of the accused." (*Id.,* at pp. 57-58 [94 L.Ed.2d at pp. 57-58, 107 S.Ct. at p. 1002]; fn. omitted.)

The court further observed that the litigant is not entitled to examine the files but that the files should be delivered to the court in camera for the purpose of determining what part, if any, should be released.

Thus, there was statutory authorization for the disclosure, and the court in substance held that the lower court should not have denied production of the confidential records for in camera inspection in the pending criminal proceeding. For the reasons we have articulated, *Ritchie* and the other cases do not require the disclosure of confidential records protected by section 4514 to an administrative hearing officer in a license revocation proceeding when those records have not been used by the DSS in the preparation of the accusation or at the hearing.

 Every time a privilege or confidentiality is successfully invoked there is of necessity a restriction on evidence that may be helpful to a party at a hearing or at trial. There is a risk of unfairness to the party against whom the issue is resolved. However, such a possibility does not necessarily result in the deprivation of due process. As the Supreme Court stated in *Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 599-600 [208 Cal.Rptr. 886, 691 P.2d 642], a case involving the attorney-client privilege: "Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship. As this court has stated: 'The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.' [Citations.]"

Having held under the facts that the trial court properly determined that the records are not accessible to petitioners, we need not reach or discuss the contentions of real parties in interest that the patient-psychotherapist and doctor-patient privileges contained in the Evidence Code bar the disclosures. In any event, the trial court did not pass upon the applicability of

those privileges, and the record before us is not sufficient to enable us to do so.

The petition for writ of mandate is denied, and the stay order is dissolved. Costs to real parties in interest.

Martin, J., and Best, J., concurred.

Petitioners' application for review by the Supreme Court was denied August 19, 1987.