Filed 10/9/13 (reposted without change 10/9/13 to attach unmodified opn.)

## <u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

**----**

| | |
|---|---|
| STATE DEPARTMENT OF PUBLIC HEALTH, | C072325 |
| Petitioner, | (Super. Ct. No. 34-2012-80001044) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | [CHANGE IN JUDGMENT] |
| CENTER FOR INVESTIGATIVE REPORTING, | |
| Real Party in Interest. | |

THE COURT:

It is ordered that the Disposition of the published majority opinion filed herein on September 18, 2013, be modified as follows:

1. Delete the third sentence (and its following citation) of the Disposition, which reads "Each party shall pay its own costs in this writ review proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(B); Gov. Code, § 6259, subd. (c).)"

2. At the end of the last sentence of the Disposition, which begins "To the extent the trial court" and ends with "court costs incurred in the trial court." insert the following text ", and in this court." so that the Disposition now reads:

1

# DISPOSITION

Having complied with the procedural requirements for issuance of a peremptory writ in the first instance, we are authorized to issue the peremptory writ forthwith.  (See *Palma v. U.S. Industrial Fasteners*, *Inc*. (1984) 36 Cal.3d 171.)  Let a peremptory writ of mandate issue directing respondent Superior Court to vacate its judgment of October 22, 2012, and its ruling under submission of September 13, 2012, and to enter a new judgment (1) that directs Public Health to produce to News Center the requested citations in accordance with the standards set forth in this opinion, *ante*, at pages 19 to 22 (pt. III.D. of the Discussion), and (2) that grants declaratory relief to News Center to this same extent (on News Center's parallel complaint for declaratory relief).  To the extent the trial court determines that News Center prevailed in this matter, News Center is entitled to recover, upon appropriate application, reasonable attorney fees and court costs incurred in the trial court, and in this court.  (Gov. Code, § 6259, subd. (d).)[14]

This modification represents a change in the judgment.

BY THE COURT:

    HULL    , Acting P. J.

    BUTZ    , J.

_____

[14]    In this writ review proceeding, we have resolved the specific issue presented regarding the potential conflict between the Lanterman Act's confidentiality provisions and the Long-Term Care Act's public accessibility provisions in the context of the PRA request here.  Public Health also asks us, more generally, whether it is obligated to produce other information and documents, and whether it is immune from sanctions for wrongful disclosures.  To the extent these two issues are not covered by our resolution here, we decline to address them at this point.  (See *Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 432, 434-435 [public agency may not initiate declaratory relief action to determine its duties under the PRA].)

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Sacramento)**

**----**

| | |
|---|---|
| STATE DEPARTMENT OF PUBLIC HEALTH, | C072325 |
| Petitioner, | (Super. Ct. No. 34-2012-80001044) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| CENTER FOR INVESTIGATIVE REPORTING, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for extraordinary writ of mandate. Timothy M. Frawley, Judge. Peremptory writ issued.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Niromi W. Pfeiffer and Grant Lien, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Davis Wright Tremaine, Duffy Carolan and Jeff Glasser for Real Party in Interest.

This is an action under the California Public Records Act (PRA) (Gov. Code, § 6250 et seq.). Pursuant to the PRA, an investigative news organization requested citations for patient care violations that the State Department of Public Health (Public Health) issued to state facilities housing mentally ill and developmentally disabled patients. These citations were issued under California's Long-Term Care, Health, Safety, and Security Act of 1973 (hereinafter, Long-Term Care Act) (Health & Saf. Code, § 1417 et seq.).

Long-Term Care Act citations are publicly accessible in certain contexts, including through a PRA request. However, another statutory scheme, the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) and companion statutes in the Lanterman Developmental Disabilities Services Act (*id*., § 4500 et seq.), renders mental health records, and information obtained in the course of providing such services, confidential (*id*., §§ 5328, 5328.15, 4514).[1]

Pursuant to the Lanterman Act, Public Health redacted from the citations it provided the news organization essentially all the facts concerning the nature of the violations.

In this writ review proceeding (Gov. Code, § 6259, subd. (c)), we harmonize the Long-Term Care Act's public accessibility provisions with the Lanterman Act's confidentiality provisions in the context of this PRA request. We conclude, among other things, that Public Health must not redact from the citations provided under the PRA the particular description of what the nature of the violation was, a description required by the Long-Term Care Act. Consequently, we issue a peremptory writ of mandate along these lines.

---

[1] We will refer to this statutory scheme—the Lanterman-Petris-Short Act and the Lanterman Developmental Disabilities Services Act—collectively as the Lanterman Act.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2011, the Center for Investigative Reporting (News Center), an investigative news organization, requested under the PRA (Gov. Code, § 6250 et seq.) copies of citations for violations of patient care standards that Public Health issued to seven of the state's residential facilities for the mentally ill and the developmentally disabled (occasionally hereinafter, state facilities; these facilities are operated by the State Department of Developmental Services, not a party herein).[2] News Center sought citations issued from January 1, 2002, to the present.

Public Health responded to News Center's PRA request by stating that Public Health was required to maintain citations for only four years, and that any citations produced would be redacted pursuant to the confidentiality provisions set forth in the Lanterman Act, applying to the mentally ill and the developmentally disabled.

Public Health produced 55 extensively redacted citations for the years 2007 to 2011. Public Health removed essentially all factual information about the nature of the violation from the citations, so that they stated generically along the following lines: "The facility failed to keep Client 1 free from harm"; "The facility . . . failed to ensure clients' rights to be free from the harm of abuse"; "The facility . . . failed to treat clients with dignity and respect"; or simply, "The facility failed to:  [remainder redacted]."

News Center filed a complaint for declaratory relief and petitioned the trial court for a writ of mandate to obtain the PRA-requested citations in unredacted or minimally redacted form. News Center relied principally on the Long-Term Care Act (Health & Saf. Code, § 1417 et seq.), the statutory scheme under which Public Health issued the

---

[2]  The term "developmental disability" includes "mental retardation, cerebral palsy, epilepsy, and autism" and disabling conditions "closely related to mental retardation"; the term does not include "handicapping conditions that are solely physical in nature." (Welf. & Inst. Code, § 4512, subd. (a).)

3

citations. The Long-Term Care Act provides that its citations (for found violations) are publicly available (*id*., § 1429; see *id*., §§ 1423, 1424), and that its writings are open to public inspection pursuant to the PRA, except for the names of individuals other than certain investigating officers (*id*., § 1439).

In ruling on News Center's complaint and writ petition, the trial court concluded that (1) "[w]here mental health records are involved [(i.e., the records at issue here)], there is an irreconcilable conflict between the Lanterman Act's confidentiality provisions and the Long-Term Care Act's accessibility provisions"; (2) "[t]he statutes cannot be harmonized by disclosing the citation denuded of all the underlying factual information giving rise to the citation"; and (3) "the Legislature intended the accessibility provisions of the Long-Term Care Act to prevail as a special exception to the Lanterman Act's general rule of confidentiality." Consequently, the trial court issued a writ of mandate (and corresponding declaratory relief) directing Public Health to produce the citations requested by News Center "without redaction, except as to the names of individuals other than investigating officers . . . ."**3**

---

**3** The trial court also stated that Public Health could not rely on "its internal retention policy" (i.e., Public Health's policy that it was required to maintain citations for only four years), and concluded that if Public Health still has responsive documents, it is obligated to produce them. In the context of our resolution of this case, we agree.

4

Public Health filed a petition for extraordinary writ of mandate with us, seeking review of the trial court's decision. (Gov. Code, § 6259, subd. (c).)[4] We issued an alternative writ and stayed further proceedings.[5]

---

[4] In a one-paragraph passage in its writ review petition, Public Health contends the trial court's writ of mandate also overlooked the privacy protections set forth in the Information Practices Act of 1977 (Civ. Code, § 1798 et seq.), which prohibits state agencies from releasing an individual's personal identifying information unless authorized to do so—for example, name, home address, home phone number, social security number, or medical history or financial matters. (Civ. Code, §§ 1798.3, subd. (a), 1798.24.) The trial court's ruling and writ order redacted names, and contemplated redacting any personal identifying information that could be akin to "naming" someone (except, as the relevant statutes provide, the names of certain investigators). We intend our resolution of this case to similarly foreclose the release of personal identifying information.

[5] News Center claims that we lack jurisdiction to consider Public Health's writ review petition, because Public Health filed its petition late. (Gov. Code, § 6259, subd. (c); *People v. Superior Court* (*Brent*) (1992) 2 Cal.App.4th 675, 683 [where a statute sets forth a specific time limit within which a writ petition must be filed, the failure to do so has been held jurisdictional].) We disagree. Under the PRA review procedure, Public Health had 25 days from the date the court clerk served notice of the trial court's ruling (20 days plus five days for mailing) either to file with us its petition for extraordinary writ (seeking review), or to request a filing extension from the trial court of up to 20 more days. (Gov. Code, § 6259, subd. (c); see *Cornell University Medical College v. Superior Court* (1974) 38 Cal.App.3d 311, 314 [it is generally implied in such a statute that an extension must be requested before the statutory filing deadline expires].) The court clerk stated that it mailed the trial court's ruling on September 13, 2012, but the trial court's postage meter disclosed the ruling was mailed September 17, 2012. Public Health's first act regarding its writ review petition was to seek in the trial court on October 10, 2012, an extension of time to file the petition (and the trial court granted Public Health a 20-day extension). This October 10 date is *27* days from September 13, but only *23* days from September 17. Recognizing the import of which mailing date was the correct one given the *25*-day deadline to act, the parties letter-briefed the trial court on this issue, and the trial court, as authorized by Code of Civil Procedure section 1013a, subdivision (4), impliedly determined that the September 17 date was the correct one. Public Health then filed its petition for extraordinary writ of mandate (seeking review) with us on October 26, 2012, which is 39 days from September 17.

5

## DISCUSSION

### I. Issue and Standard of Review

New Center's PRA request for the Public Health citations for the state facilities implicates three statutes: the PRA (Gov. Code, § 6250 et seq.); the Long-Term Care Act (Health & Saf. Code, § 1417 et seq.); and the Lanterman Act (Welf. & Inst. Code, §§ 5000 et seq., 4500 et seq.).[6]

The issue is, in the context of a PRA request for citations issued by Public Health to state facilities housing the mentally ill and the developmentally disabled: Can the public accessibility provisions for citations issued under the Long-Term Care Act be reconciled with the confidentiality provisions of the Lanterman Act, and, if so, how?

The PRA provides for the inspection of public records maintained by state and local government agencies to fulfill the "fundamental and necessary right of every person in this state" to have access to information concerning the conduct of the people's business. (Gov. Code, § 6250.) The PRA's general policy is to favor disclosure; a claim of nondisclosure must be found in a specific exemption enumerated in that act. (*Cook v. Craig* (1976) 55 Cal.App.3d 773, 781; Gov. Code, § 6253.) The PRA exemption at issue here masks "[r]ecords, the disclosure of which is exempted or prohibited pursuant to . . . state law . . . [the state law here being the Lanterman Act confidentiality provisions]." (Gov. Code, § 6254, subd. (k).) The Long-Term Care Act, however, makes its citations publicly accessible via statutory provisions on posting, requesting, and the PRA. (See Health & Saf. Code, §§ 1423, 1424, 1429, 1439.)

---

[6] Because the statutes we discuss are found in various codes, for simplicity, we will refer to the statutes *in discussion* pursuant to their act rather than their code—for example, section 6254 of the PRA (i.e., the Government Code); section 1417 of the Long-Term Care Act (i.e., the Health and Safety Code); and section 5328 of the Lanterman Act (i.e., the Welfare and Institutions Code). We will, however, *cite* to the acts by their respective code attributions.

6

As for any reconciliation between the Long-Term Care Act's public accessibility provisions and the Lanterman Act's confidentiality provisions, "[t]he issue presented is essentially one of statutory construction. When engaged in statutory construction, our aim is 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citations.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent.' [Citation.] When construing the interaction of two potentially conflicting statutes, we strive to effectuate the purpose of each by harmonizing them, if possible, in a way that allows both to be given effect." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 986 (*Chavez*).)

We turn now to the statutory purposes and relevant language of the Long-Term Care Act and the Lanterman Act.

## II. The Statutory Purposes and Relevant Language of the Long-Term Care Act and the Lanterman Act

### A. The Long-Term Care Act

The Long-Term Care Act (Health & Saf. Code, § 1417 et seq.), which applies to the state facilities for the mentally ill and the developmentally disabled at issue here, also applies to the much more populous skilled nursing facilities and convalescent hospitals in the state (and essentially to all long-term health care facilities in the state). (See Health & Saf. Code, §§ 1418, 1250.)

The Long-Term Care Act establishes an inspection, citation, reporting, and civil (monetary) penalty system that is designed to create a less cumbersome, less draconian, and more preventative enforcement method than the system of suspending and revoking health facility licenses. (See Health & Saf. Code, div. 2, chs. 2, 2.4, 3; Health & Saf. Code, § 1417.1; *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 294-295 (*California Assn.*); *Kizer v. County of San Mateo* (1991)

7

53 Cal.3d 139, 150 (*Kizer*).)  This act is designed to "ensure that long-term health care facilities provide the highest level of care possible," by ensuring that patient care standards are met.  (Health & Saf. Code, §§ 1422, subd. (a), 1417.1.)  The Long-Term Care Act applies to some "of the most vulnerable segments of our population"—for example, " 'nursing care patients . . . who are already disabled by age and infirmity' " and, as here, the mentally ill and the developmentally disabled.  (*California Assn.*, *supra*, 19 Cal.4th at p. 295; *Kizer*, *supra*, 53 Cal.3d at p. 150.)  As a remedial statute, the Long-Term Care Act's citation provisions are to be liberally construed on behalf of the class of persons they are designed to protect.  (*California Assn.*, *supra*, at p. 295; Health & Saf. Code, § 1424.)

Public Health (formerly the Department of Health Services) administers and enforces the Long-Term Care Act.  (*California Assn.*, *supra*, 16 Cal.4th at p. 288.)  The Long-Term Care Act contains provisions that make citations publicly available, except for the names of individuals other than specified investigating officers.  (See Health & Saf. Code, §§ 1423, subd. (a)(2), 1424, 1429, 1439.)  Public availability of the citations is accomplished primarily through prominent posting at the facility (for the more serious class A and class AA citations), public request, and PRA request.  (Health & Saf. Code, §§ 1429, 1439.)  In this way, the Long-Term Care Act affords the public an oversight role concerning long-term health care facilities.  We note, however, that the media, such as News Center, has no greater right of access to public records pursuant to a PRA request than the general public.  (*Dixon v. Superior Court* (2009) 170 Cal.App.4th 1271, 1279.)

The two most pertinent provisions of the Long-Term Care Act covering the nature of citation information available to the public are sections 1423 and 1424.  (Health & Saf. Code, §§ 1423, 1424.)

Health and Safety Code section 1423, subdivision (a)(2) specifies, as relevant, that "[e]ach citation shall be in writing and shall describe with particularity the nature of the

8

violation, including a reference to the statutory provision, standard, rule or regulation alleged to have been violated, the particular place or area of the facility in which it occurred, as well as the amount of any proposed assessment of a civil penalty.  The name of any patient jeopardized by the alleged violation shall not be specified in the citation in order to protect the privacy of the patient. . . .  The citation shall fix the earliest feasible time for the elimination of the condition constituting the alleged violation, when appropriate."

And Health and Safety Code section 1424, subdivisions (a) and (b) add, as relevant:

"Citations issued pursuant to [the Long-Term Care Act] shall be classified according to the nature of the violation and shall indicate the classification on the face thereof [(i.e., class 'B', class 'A', and class 'AA' [in increasing severity])].

"(a) In determining the amount of the civil penalty, all relevant facts shall be considered, including, but not limited to, the following:

"(1) The probability and severity of the risk that the violation presents to the patient's or resident's mental and physical condition.

"(2) The patient's or resident's medical condition.

"(3) The patient's or resident's mental condition and his or her history of mental disability or disorder.

"(4) The good faith efforts exercised by the facility to prevent the violation from occurring.

"(5) The licensee's history of compliance with regulations.

"(b) Relevant facts considered by [Public Health] in determining the amount of the civil penalty shall be documented by [Public Health] on an attachment to the citation and available in the public record. . . ."

News Center made its request for the Public Health citations pursuant to section 1439 of the Long-Term Care Act, the act's PRA provision. (Health & Saf. Code, § 1439.)

Section 1439 of the Long-Term Care Act states that "[a]ny writing received, owned, used, or retained by [Public Health] in connection with the [Long-Term Care Act] is a public record within the meaning of [the PRA], and, as such, is open to public inspection pursuant to the [PRA] provision[s] of Sections 6253, 6256, 6257, and 6258 of the Government Code. However, the names of any persons contained in such records, except the names of duly authorized officers, employees, or agents of the state department conducting an investigation or inspection in response to a complaint filed pursuant to [the Long-Term Care Act], shall not be open to public inspection and copies of such records provided for public inspection shall have such names deleted." (Health & Saf. Code, § 1439.) Government Code section 6253, subdivision (b) of the PRA states, as relevant, that public records are to be made promptly available, "[e]xcept with respect to public records exempt from disclosure by express provisions of law . . . ." Government Code sections 6256 and 6257 have been repealed. (Stats. 1998, ch. 620, §§ 7, 10, p. 4121.) Government Code section 6258 governs the proceedings to enforce the right to the record.

Section 6254 of the PRA specifies the particular types of records exempt from PRA disclosure. The PRA disclosure exemption at issue here, as noted, is for "[r]ecords, the disclosure of which is exempted or prohibited pursuant to . . . state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code, § 6254, subd. (k).)

10

That leads us to the state law here on exempting or prohibiting disclosure—
sections 5328 and 4514 of the Lanterman Act. (Welf. & Inst. Code, §§ 5328, 4514.)

## B.  The Lanterman Act

The Lanterman Act (see Welf. & Inst. Code, §§ 4500 et seq., 5000 et seq.) is a
comprehensive state law directed at the evaluation, supervision, protection, care and
treatment of persons who are mentally ill, developmentally disabled or impaired by
chronic alcoholism. (Welf. & Inst. Code, § 5001.)[7]

The Lanterman Act states that all information and records obtained in the course
of providing services under the Lanterman Act (and other specified mental health
programs) shall be confidential, subject to defined statutory exceptions. (Welf. & Inst.
Code, §§ 4514, 5328.) The legislative purpose for confidentiality is to encourage persons
with mental or severe alcohol problems or developmental disabilities to seek, undergo
and accept treatment, and to be candid and open in such treatment, knowing such
treatment will remain confidential and any embarrassment, undesired publicity or stigma
will be avoided. (*In re S. W.* (1978) 79 Cal.App.3d 719, 721; *County of Riverside v.
Superior Court* (1974) 42 Cal.App.3d 478, 481 (*County of Riverside*); see also *Tarasoff v.
Regents of University of California* (1976) 17 Cal.3d 425, 440 (*Tarasoff*).)

Section 5328 of the Lanterman Act sets forth the following general rule of
confidentiality applying to the mentally ill: "All information and records obtained in the

---

[7]  As originally enacted, the Lanterman-Petris-Short Act, including its confidentiality
provisions, applied to both the mentally ill and the developmentally disabled. (Welf. &
Inst. Code, § 5328, added by Stats. 1972, ch. 1058, § 2, pp. 1960-1961; *Gilbert v.
Superior Court* (1987) 193 Cal.App.3d 161, 168-169 (*Gilbert*).) For our purposes, a later
nonsubstantive statutory division kept the mentally ill (and chronically alcoholic) in the
Lanterman-Petris-Short Act, and placed the developmentally disabled in the parallel
companion statutory scheme of the Lanterman Developmental Disabilities Services Act;
the confidentiality provisions of both acts are quite similar. (See, e.g., Welf. & Inst.
Code, §§ 4500, 4514, 5328; *Gilbert*, *supra*, at pp. 168-169.)

course of providing services under Division 4 (commencing with Section 4000 [mental health]), Division 4.1 (commencing with Section 4400 [developmental services]), Division 4.5 (commencing with Section 4500 [the Lanterman Developmental Disabilities Services Act]), Division 5 (commencing with Section 5000 [the Lanterman-Petris-Short Act]), Division 6 (commencing with Section 6000 [admissions and judicial commitments]), or Division 7 (commencing with Section 7100 [mental institutions]), to either voluntary or involuntary recipients of services shall be confidential. . . . Information and records shall be disclosed only in any of the following cases." (Welf. & Inst. Code, § 5328.)  Presently, section 5328 has 25 exemptions to its general rule of confidentiality, covering service provider communications, patient consent, insurance claims, research purposes, courts, law enforcement, senate and assembly rules committees, patient's attorney, coroner, licensing and investigative agency personnel, medical boards, and patient safety.  (Welf. & Inst. Code, § 5328, subds. (a)-(y).)  In addition, additional exemptions are set out in successive code sections to section 5328.[8]

Section 4514 of the Lanterman Act—as noted, enacted as a nonsubstantive amendment intended to move the confidentiality laws concerning the developmentally disabled from the Lanterman-Petris-Short Act to the Lanterman Developmental Disabilities Services Act—sets forth now the general confidentiality rule for the developmentally disabled, and provides as pertinent:  "All information and records obtained in the course of providing intake, assessment, and services under Division 4.1 (commencing with Section 4400), Division 4.5 (commencing with Section 4500),

---

[8]  See Welfare and Institutions Code sections 5328.01 (particular law enforcement investigation), 5328.02 (correctional authorities), 5328.04 (social workers/probation officers), 5328.05 (elder abuse), 5328.06 (protection and advocacy agency), 5328.1 (patient's family), 5328.2 (Justice Department), 5328.3 (patient disappearance), 5328.4 (crimes by or against patients), 5328.5 (elder abuse), 5328.8 (patient death), 5328.9 (employer), and 5328.15 (authorized licensing personnel).

12

Division 6 (commencing with Section 6000), or Division 7 (commencing with Section 7100) to persons with developmental disabilities shall be confidential. . . . Information and records shall be disclosed only in any of the following cases." (Welf. & Inst. Code, § 4514; see *Gilbert*, *supra*, 193 Cal.App.3d at pp. 168-169.) Section 4514 has exemptions to its general confidentiality rule that parallel those for section 5328. (Welf. & Inst. Code, §§ 4514, subds. (a)-(v), 4514.3, 4514.5.)

"Services" is defined broadly in the Lanterman Act, as including, but not limited to, "diagnosis, evaluation, treatment, personal care, day care, domiciliary care, special living arrangements, physical, occupational, and speech therapy, training, education, . . . employment, mental health services, recreation, counseling . . . , protective and other social and sociolegal services, information and referral services, follow-along services, adaptive equipment and supplies, advocacy assistance, . . . assessment, assistance in locating a home, child care, behavior training and behavior modification programs, camping, community integration services, community support, daily living skills training, emergency and crisis intervention, facilitating circles of support, habilitation . . . ," and so on and so forth, covering essentially anything "directed toward the alleviation of a developmental disability [or a mental illness] or toward the social, personal, physical, or economic habilitation or rehabilitation of an individual with a developmental disability [or a mental illness] . . . ." (Welf. & Inst. Code, § 4512, subd. (b).)

We now turn to the application of this statutory language. Let reconciliation begin, if it is possible.

### III. Applying and Harmonizing the Lanterman Act's Confidentiality Provisions and the Long-Term Care Act's Public Accessibility Provisions

#### A. Application of the Lanterman Act

We must first consider Public Health's threshold argument that "[t]he Long-Term Care Act authorizes [PRA] requests for citations issued to long-term care facilities,

13

subject to the exceptions set forth in the [PRA].  (Health & Saf. Code, § 1439.)  The [PRA] does not require the disclosure of records whose disclosure is exempted or prohibited under . . . state law.  (Gov. Code, § 6254, subd. (k).)  Under the Lanterman Act, all information and records obtained in the course of providing services to mentally ill and developmentally disabled patients shall remain confidential.  (Welf. & Inst. Code, [§§ 5328, 4514].)"  "Hence, any request for [Long-Term Care Act] citations should not result in the production of information or documents privileged by the Lanterman Act."  "The [Long-Term Care Act] and the Lanterman Act are not in conflict, and Public Health abided by both statutes when it produced heavily redacted citations [i.e., devoid of all facts regarding the nature of the violation] to [News Center]."

The problem with this argument is that it uses the Long-Term Care Act to defeat the Long-Term Care Act with respect to the mentally ill and the developmentally disabled.  Public Health's argument uses one of the Long-Term Care Act's public accessibility provisions—PRA requests (Health & Saf. Code, § 1439)—to foreclose, almost completely, public accessibility to Long-Term Care Act citations issued to state facilities housing the mentally ill and the developmentally disabled.  In making this argument Public Health notes that, since nearly everything that happens to a patient in one of the state facilities at issue happens "in the course of providing services" to that patient, the Lanterman Act's general confidentiality rule conceivably applies to nearly all patient-related mental health records.  Through this argument, Public Health completes a hat trick of public oversight denial, by effectively nullifying the public accessibility of Long-Term Care Act citations via facility posting, public request, and PRA request; and Public Health does so in the context of one of the most vulnerable populations protected by the Long-Term Care Act.  The Legislature did not exempt state facilities housing the mentally ill and the developmentally disabled from the Long-Term Care Act's public

14

oversight protection through its public accessibility provisions. But Public Health's argument does; so we reject it.[9]

As noted, "[w]hen construing the interaction of two potentially conflicting statutes, we strive to effectuate the purpose of each by harmonizing them, if possible, in a way that allows both to be given effect." (*Chavez*, *supra*, 47 Cal.4th at p. 986.)

On the one hand, the case for confidentiality under the Lanterman Act is indeed strong.

The Lanterman Act's confidentiality provisions are quite broad, given the statutory definition of "services," and use mandatory language—"[a]ll information and records obtained in the course of providing services . . . shall be confidential" and "shall be disclosed only in any of the following [statutorily identified] cases." (Welf. & Inst. Code, §§ 5328, 4514, 4512, subd. (b); *Gilbert*, *supra*, 193 Cal.App.3d at p. 169.)

In light of this mandatory language, *Gilbert* concluded that the Legislature intended, in fact "intended precisely," that these Lanterman Act records "be absolutely confidential except for the specifically listed cases set forth in the several subdivisions of" sections 5328 and 4514 (and in their companion statutes). (*Gilbert*, *supra*, 193 Cal.App.3d at p. 169; Welf. & Inst. Code, §§ 5328, 4514.) *Gilbert* held, for our

---

[9] As an opposing aside to this point, News Center argues that information obtained in a citation investigation is not information "obtained in the course of providing services." (Citing *Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1585-1586 [in an action for breach of Lanterman Act confidentiality, the court stated, "[w]here there is no showing by the person claiming confidentiality of records under [Welfare and Institutions Code] section 5328 that the records were generated in the course of receiving treatment under the statutory sections therein specified, disclosure is not governed by section 5328"]; see also *Tarasoff*, *supra*, 17 Cal.3d at p. 443 [because the psychotherapy at issue there was not provided under any of the mental health programs specified in the Lanterman Act, that act's confidentiality provisions did not apply].) We agree with the trial court that a citation for violating patient care standards still is likely to include information obtained in the course of providing services to patients.

15

purposes, that an owner/operator of a facility for the developmentally disabled, in an administrative license revocation proceeding, could not obtain records of three of its former patients for possible use in impeaching complaining witnesses or in mitigating any penalty. (*Gilbert*, at pp. 164-165, 169; see also *County of Riverside*, *supra*, 42 Cal.App.3d at pp. 480-481 [state chiropractic board, in license revocation proceeding, could not obtain alcoholic treatment center records involving the accused chiropractor, because the matter did not fall within any of the specific disclosure exceptions set forth in Welf. & Inst. Code, § 5328 and succeeding sections]; *People v. Gardner* (1984) 151 Cal.App.3d 134, 140 [§ 5328 prohibited patient information disclosure to probation officer preparing probation report for court, because the section (at that time) had no such confidentiality exception].)

This strict interpretation of the confidentiality provisions of sections 5328 and 4514 of the Lanterman Act (and succeeding statutes) is further buttressed by a trio of amendments to that act, including a very recent one:

(1) a 1980 enactment (Welf. & Inst. Code, § 5328.15, subd. (a)) and a 1982 enactment (Welf. & Inst. Code, § 4514, subd. (n)) authorizing disclosure of Lanterman Act confidential information and records to authorized licensing personnel of Public Health, as necessary to the performance of their duties to inspect, license, and investigate health facilities to ensure that the standards of care are being met; and setting forth measures to keep such information confidential in related criminal, civil, or administrative proceedings (Stats. 1980, ch. 695, § 1, p. 2095; Stats. 1982, ch. 1141, § 1, pp. 4111-4112);

(2) parallel amendments in 1985 to the two statutes listed in (1), broadening those sections to also include authorized legal staff and special investigators of the Department of Social Services, in connection with inspecting, licensing and investigating (Stats.

16

1985, ch. 994, §§ 1, 2, pp. 3190-3194, 3198-3199; see *Gilbert*, *supra*, 193 Cal.App.3d at p. 172); and

(3) amendments to Welfare and Institutions Code sections 5328.15 and 4514, adopted just last September (2012), that authorize protection and advocacy agencies— i.e., private, nonprofit corporations created by statute to protect and advocate for the rights of the mentally ill and the developmentally disabled (and other disabled persons)— to obtain otherwise confidential Lanterman Act information and records incorporated within unredacted citation reports, licensing reports, survey reports, statements of deficiency, and plans of correction (Welf. & Inst. Code, §§ 5328.15, subd. (c), 4514, subd. (v), Stats. 2012, ch. 664, §§ 3, 1, respectively; see §§ 4514.3, 5328.06, 4900 et seq., 4901, subd. (a)).

The point is—if explicit statutory permission was needed for authorized licensing personnel, legal staff, special investigators, and protection and advocacy agencies to fully obtain the otherwise confidential Lanterman Act information and records—it is clear the Legislature intends to maintain confidentiality in the Lanterman Act context. Furthermore, if nearly all of this information could have been obtained through a simple PRA request, these statutory enactments and amendments would have been unnecessary.

### B. *Application of the Long-Term Care Act*

On the other hand, the case for public accessibility to Long-Term Care Act citations is strong as well.

Through the Long-Term Care Act, the Legislature intended to establish an inspection, citation and reporting system to ensure that long-term health care facilities comply with patient care standards. (Health & Saf. Code, § 1417.1.) An integral part of this system is public oversight—a public look behind the doors of these institutions—by making citations for violations of patient care standards publicly available through

17

various statutory means, including facility posting, public request, and PRA request. (*Id*., §§ 1423, 1424, 1429, 1439.)

The Long-Term Care Act is designed to protect some of the "most vulnerable segments of our population." (*California Assn*., *supra*, 16 Cal.4th at p. 295; *Kizer*, *supra*, 53 Cal.3d at p. 150.) The mentally ill and the developmentally disabled in the state facilities comprise some of the most vulnerable of these most vulnerable—i.e., some of those most in need of the safeguards provided by public oversight of patient care standards as envisioned in the Long-Term Care Act.

Given the strong hands played by both the Lanterman Act's confidentiality provisions and the Long-Term Care Act's public accessibility provisions, legislative intention would best be served by harmonizing them, if possible, in a way that allows both to be given effect. (See *Chavez*, *supra*, 47 Cal.4th at p. 986.)

As the trial court recognized, because the confidentiality provisions of the Lanterman Act apply to mental health programs, any conflict between those confidentiality provisions and the Long-Term Care Act's public accessibility provisions occurs in the context of mental health records (including the developmentally disabled).

## C. Common Purpose of Both Acts

The mentally ill and the developmentally disabled in state facilities comprise a relatively small portion of the overall population protected by the Long-Term Care Act. Significantly, with respect to the mentally ill and the developmentally disabled in state facilities, the Lanterman Act and the Long-Term Care Act apply to the same population and seek the same purpose—to promote and protect the health and safety of mental health patients. But the two acts effectuate this common purpose from opposite directions. The Lanterman Act effectuates this purpose by ensuring the confidentiality of mental health records—this encourages persons with mental problems to seek, accept and undergo treatment, and to be open and candid in treatment. The Long-Term Care Act effectuates

18

this purpose, as relevant here, by making citations for violations of patient care standards publicly accessible, so the public can oversee what is happening in these facilities. This congruence of population and purpose, and this effectuation of purpose from opposite directions, creates a complementarity of method to effectuate the common purpose for this common population. In this way, these confidentiality and public accessibility provisions can be harmonized.[10]

That takes care of the theory supporting harmonization here. What does harmonization mean in practical terms, in terms of the statutory language at issue?

### D. Giving Effect to Both the Lanterman Act and the Long-Term Care Act

We have seen that a citation issued under the Long-Term Care Act (1) must describe "with particularity the nature of the violation" (Health & Saf. Code, § 1423, subd. (a)(2)), and (2) must set forth certain "[r]elevant facts" (*id.*, § 1424, subd. (b)), except for the names of the persons involved in the incident (other than specified investigators and inspectors) (*id.*, § 1439).

1. Names of involved persons.

We start, then, with the easiest harmonization concerning the Long-Term Care Act's public accessibility provisions and the Lanterman Act's confidentiality provisions—any names contained in the citations, other than those of the authorized inspectors and investigators specified in section 1439 of the Long-Term Care Act, must be deleted. (Health & Saf. Code, § 1439; Welf. & Inst. Code, §§ 5328, 4514.)

_____

[10] Moreover, this congruence of population and purpose also distinguishes the present case from the strict view of Lanterman Act confidentiality taken in the *Gilbert* line of decisions, where the competing legal interests did not involve such congruity. (See, e.g., *Gilbert*, *supra*, 193 Cal.App.3d at pp. 164, 168-169 [confidential records of developmentally disabled patients sought by accused facility to assist its defense in license revocation proceeding]; *County of Riverside*, *supra*, 42 Cal.App.3d at p. 481 [in license revocation proceeding, chiropractic board sought confidential alcoholic treatment records of the accused chiropractor]; see Welf. & Inst. Code, §§ 5328, 4514.)

2. Nature of the violation.

Turning to the description of the nature of the violation, Health and Safety Code section 1423, subdivision (a)(2) of the Long-Term Care Act specifies that each citation issued "shall be in writing and shall describe with particularity the nature of the violation, including a reference to the statutory provision, standard, rule or regulation alleged to have been violated, the particular place or area of the facility in which it occurred, as well as the amount of any proposed assessment of a civil penalty. . . . The citation shall fix the earliest feasible time for the elimination of the condition constituting the alleged violation, when appropriate."

The redacted citations provided by Public Health did properly cite and set forth "the statutory provision, standard, rule or regulation [found] to have been violated" (Health & Saf. Code, § 1423, subd. (a)(2)), "the amount of [the] assessment of a civil penalty" (*ibid.*), and "the earliest feasible time for the elimination of the condition constituting the alleged violation" (by specifying a deadline for compliance) (*ibid.*), as well as the "classification" of the citation (in increasing severity, Class "B," Class "A," and Class "AA" as required by Health & Saf. Code, § 1424). The citations also properly listed the name and address of the facility.

The redacted citations that Public Health provided to News Center stated next to nothing, however, regarding the nature of the violation; all that was said along those lines, for example, was that the client was not kept free from harm or from abuse, or that the facility failed to comply with the designated regulation, or that the facility simply "failed to: . . ." In terms of describing the nature of the violation, the Long-Term Care Act's public accessibility provisions can be harmonized with the Lanterman Act's mental health-based confidentiality provisions, by having the citations describe with particularity, for example, *what* was the harm, *what* was the abuse, *what* was the lack of respect or dignity afforded, and *what* was the action that the facility did or failed to do. In addition, Public Health must also identify "the *particular place or area of the facility*

20

in which [the violation] occurred." (Health & Saf. Code, § 1423, subd. (a)(2), italics added.)

One further point on this topic deserves mention. At oral argument, News Center's counsel agreed that if a requested citation specifies facts that identify an individual whose name is not to be disclosed (i.e., specifies facts that are the functional equivalent of naming that individual), those facts may be redacted. At this stage of the proceedings, we do not know if the (heavily redacted) requested citations contain any such facts. On remand, if there is a disclosure issue in this regard, the trial court can determine that issue by reviewing the challenged citation in camera.

That covers the issue of harmonizing the disclosure of "the nature of the violation." (Health & Saf. Code, § 1423, subd. (a)(2).) We turn to the issue of the "relevant facts."

3. Relevant facts.

Section 1424, subdivision (b) of the Long-Term Care Act states that "[r]elevant facts considered by [Public Health] in determining the amount of the civil penalty shall be documented by [Public Health] on an attachment to the citation and available in the public record." (Health & Saf. Code, § 1424, subd. (b).) These relevant facts include the patient's or resident's mental condition, medical condition, and history of mental disability or disorder, and the risk the violation presents to the patient's or resident's mental and physical condition; as well as the facility's good faith efforts to prevent the violation, and the licensee's history of regulatory compliance. (*Id*., § 1424, subd. (a)(1)-(5).)

The patient's or resident's mental, physical, and medical conditions, history of mental disability or disorder, as well as the risk the violation presents to that mental and physical condition, are not disclosable in PRA-requested citations, in light of the mental health-based confidentiality provisions of the Lanterman Act. (Health & Saf. Code,

21

§ 1424, subd. (a)(1)-(3); Welf. & Inst. Code, §§ 5328, 4514.)  However, the Lanterman Act's confidentiality provisions do not foreclose public disclosure of the "good faith efforts exercised by the facility to prevent the violation from occurring" (Health & Saf. Code, § 1424, subd. (a)(4)), and "[t]he licensee's history of compliance with regulations" (*id*., § 1424, subd. (a)(5)); indeed, these disclosures to the public would further the Long-Term Care Act's public oversight component.

### E.  Conclusion

Public Health argues that it properly harmonized the Lanterman Act's confidentiality provisions with the Long-Term Care Act's public accessibility provisions by redacting essentially all facts in the citation concerning the nature of the violation, given the Lanterman Act's confidentiality provisions.

As we saw at the outset of this part of the Discussion, *ante* (pt. III.A.), though, Public Health's position effectively writes public oversight of state facilities for the mentally ill and the developmentally disabled out of the Long-Term Care Act.  The Long-Term Care Act is an integral, complementary part of the statutory protection afforded to patients and residents of long-term health care facilities, including the state facilities; indeed, the Long-Term Care Act provides the more efficient, more preventative, less draconian citation-based protective system to the system of suspending or revoking licenses.  And an integral part of this integral act is the accessibility it affords the public to the citations issued under it.  The Long-Term Care Act is a remedial statute, and as such, is to be liberally construed on behalf of the class of persons it is designed to protect; as we have seen, a most vulnerable class here.  (See *California Assn*., *supra*, 16 Cal.4th at p. 295.)

That said, News Center argues that the Long-Term Care Act's public accessibility provisions trump the Lanterman Act's confidentiality provisions, and all that must be

22

redacted from the requested citations are the names of those involved in an incident (except investigating and inspecting officers).

News Center's position, however, effectively dismisses the strong protections of confidentiality afforded the mentally ill and the developmentally disabled under the Lanterman Act in state facilities. The Legislature has determined that these protections are necessary for the mentally ill to seek and accept treatment, and for that treatment to be effective. The Legislature, just late last year, amended the Lanterman Act's confidentiality provisions to allow protection and advocacy agencies to obtain, among other information, information within unredacted citation reports; this amendment recognized that the Legislature has long granted to mental health records a strong protection of confidentiality. (Welf. & Inst. Code, §§ 5328.15, subd. (c), 4514, subd. (v), Stats. 2012, ch. 664, §§ 3, 1, respectively.)[11] We must keep in mind that what is before

---

[11] News Centers also cites to three instances where later enacted, non-Lanterman statutes were deemed to constitute exceptions to the Lanterman Act confidentiality provisions. The first instance, *Albertson v. Superior Court* (2001) 25 Cal.4th 796, involved an amendment to the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6000 et seq.), which permitted a district attorney in an SVPA proceeding to obtain otherwise confidential treatment information in an updated mental evaluation of the inmate. As Public Health notes, *Albertson* is distinguishable because the Legislature specifically considered the confidentiality provision of section 5328 of the Lanterman Act in drafting this SVPA amendment. (*Albertson*, *supra*, 25 Cal.4th at pp. 805-807.) The other two instances involve Attorney General opinions, both of which concluded that a mandated reporter's statutory duty to report child abuse supersedes the confidentiality provisions of the Lanterman Act, because these reporting and confidentiality laws both promote the safety of children and because the entire legislative scheme in the area of child protection, as it has developed, has been directed toward discovering more abuse cases and preventing serious harm by taking prompt remedial action. (65 Ops.Cal.Atty.Gen. 345 (1982); 58 Ops.Cal.Atty.Gen. 824 (1975).) The Attorney General opinions did not encompass statutory reconciliation, but one statute trumping the other. Furthermore, we must note the informational context presented here: a PRA request from the public for Long-Term Care Act citations.

23

us is a PRA request from the public for Long-Term Care Act citations involving state facilities for the mentally ill and the developmentally disabled.[12]

Because we have found that the Lanterman Act and the Long-Term Care Act can be reconciled in the manner we have set forth in part III.D. of this Discussion, *ante*, we need not consider the parties' arguments as to which statute is general or specific, and which statute is earlier or later. (See *Department of Fair Employment & Housing v. Mayr* (2011) 192 Cal.App.4th 719, 725.)[13]

---

[12] We also note that the Long-Term Care Act has a consumer information service system, under which the general public may obtain the following information, among other information: a history of all citations and complaints for the last two full survey cycles pursuant to a facility profile; substantiated complaints, including the action taken and the date of the action; state citations assessed, including the procedural status of the citation and the facility's plan or correction; state actions, including license suspensions, revocations, and receiverships; and federal enforcement sanctions imposed. (Health & Saf. Code, §§ 1422.5, 1439.5, subd. (b).) Under this system, Public Health must "ensure the confidentiality of personal and identifying information of residents and employees and shall not disclose this information . . . ." (*Id.*, § 1422.5, subd. (e).) The disclosure of this information under the Long-Term Care Act's consumer information service system is, or can be made, compatible with our interpretation of the citation information publicly available in the context of the state facilities at issue.

[13] We grant News Center's November 5, 2012 request for judicial notice of certain legislative history of Senate Bill No. 1377 (2011-2012 Reg. Sess.) chapter 664, sections 3 and 1, which added subdivision (c) to Welfare and Institutions Code section 5328.15, and subdivision (v) to section 4514, respectively—concerning information available to protection and advocacy agencies as exemptions to the Lanterman Act's confidentiality provisions. (Evid. Code, §§ 452, 459.)

We also grant Public Health's October 26, 2012 request for judicial notice of certain legislative history of Senate Bill No. 1377, and two incidents involving unique circumstances akin to naming an otherwise confidential individual. (Evid. Code, §§ 452, 459.)

# DISPOSITION

Having complied with the procedural requirements for issuance of a peremptory writ in the first instance, we are authorized to issue the peremptory writ forthwith. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171.) Let a peremptory writ of mandate issue directing respondent Superior Court to vacate its judgment of October 22, 2012, and its ruling under submission of September 13, 2012, and to enter a new judgment (1) that directs Public Health to produce to News Center the requested citations in accordance with the standards set forth in this opinion, *ante*, at pages 19 to 22 (pt. III.D. of the Discussion), and (2) that grants declaratory relief to News Center to this same extent (on News Center's parallel complaint for declaratory relief). Each party shall pay its own costs in this writ review proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(B); Gov. Code, § 6259, subd. (c).) To the extent the trial court determines that News Center prevailed in this matter, News Center is entitled to recover, upon appropriate application, reasonable attorney fees and court costs incurred in the trial court. (Gov. Code, § 6259, subd. (d).)[14] (**CERTIFIED FOR PUBLICATION**)


                                                         BUTZ            , J.

I concur:


             HULL           , Acting P. J.

---

[14] In this writ review proceeding, we have resolved the specific issue presented regarding the potential conflict between the Lanterman Act's confidentiality provisions and the Long-Term Care Act's public accessibility provisions in the context of the PRA request here. Public Health also asks us, more generally, whether it is obligated to produce other information and documents, and whether it is immune from sanctions for wrongful disclosures. To the extent these two issues are not covered by our resolution here, we decline to address them at this point. (See *Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 432, 434-435 [public agency may not initiate declaratory relief action to determine its duties under the PRA].)

25

I respectfully dissent. Implicitly recognizing that sections 5328 and 4514 of the Lanterman Act conflict with sections 1423, 1424, and 1439 of the Long-Term Care Act,[1] the majority "harmonizes" these provisions by holding that the Long-Term Care Act controls over the Lanterman Act on the issue of "describ[ing] with particularity the nature of the violation" (Health & Saf. Code, § 1423, subd. (a)(2)), but the Lanterman Act controls over the Long-Term Care Act on the issue of setting forth other "relevant facts," including the patient's or resident's "medical" and "mental" conditions, his or her "history of mental disability or disorder," and "the risk that the violation presents to [his or her] mental and physical condition." (Health & Saf. Code, § 1424, subds. (a), (b)(1)-(3).) Thus, under the guise of bringing harmony, the majority opinion does violence to two statutory enactments—carving out of the Lanterman Act an exception allowing public citations to include an unredacted description of the nature of the violation, and severing from the Long-Term Care Act the requirement that the public record contain the aforementioned "relevant facts." As will be explained immediately below, I believe such an approach runs contrary to established rules of statutory construction.

# I

## *Principles of Statutory Construction*

"'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] We begin by examining the statutory language because the words of a statute are generally

---

[1]    In this dissenting opinion, the Lanterman Act refers to the combined Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) and Lanterman Developmental Disabilities Services Act (Welf. & Inst. Code, § 4500 et seq.). The Long-Term Care Act refers to the Long-Term Care, Health, Safety, and Security Act (Health & Saf. Code, § 1417 et seq.).

The petitioner, Department of Public Health, is referred to as Public Health.

1

the most reliable indicator of legislative intent. [Citations.] We give the words of the statute their ordinary and usual meaning and view them in their statutory context. [Citation.] We harmonize the various parts of the enactment by considering them in the context of the statutory framework as a whole. [Citations.] 'If the statute's text evinces an unmistakable plain meaning, we need go no further.' [Citation.] 'Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.' [Citations.]" (*In re C.H.* (2011) 53 Cal.4th 94, 100-101; *San Leandro Teachers Assn. v. Governing Bd. of San Leandro Unified School Dist.* (2009) 46 Cal.4th 822, 831.)

"'A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject.'" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805, quoting *Hough v. McCarthy* (1960) 54 Cal.2d 273, 279.) However, "[i]f conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation]. Absent a compelling reason to do otherwise, we strive to construe each statute in accordance with its plain language. [Citation.]" (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310; see also *People v. Moody* (2002) 96 Cal.App.4th 987, 993.)

## II

### *Conflict Between the Lanterman Act and the Long-Term Care Act*

Reading sections 5328 and 4514 of the Lanterman Act (confidentiality provisions) and sections 1423, 1424, and 1439 of the Long-Term Care Act (citation provisions) in accordance with the plain meaning of the words used therein, I conclude the two statutory

2

enactments are in conflict and no reasonable interpretation will give force and effect to all of their provisions.

First, some context. This case involves a request for citations under the Public Records Act. (Gov. Code, § 6250 et seq.) The Public Records Act "embodies a strong policy in favor of disclosure of public records (see Gov. Code, §§ 6250 & 6252, subds. (a), (b)), and any refusal to disclose public information must be based on a specific exception to that policy." (*Lorig v. Medical Board* (2000) 78 Cal.App.4th 462, 467.) One such exception applies to "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law." (Gov. Code, § 6254, subd. (k).) However, "[s]ince disclosure is favored, all exemptions are narrowly construed. [Citations.] The agency opposing disclosure bears the burden of proving that an exemption applies. [Citation.]" (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1321.)

The Lanterman Act, the majority opinion correctly observes, is a "comprehensive state law directed at the evaluation, supervision, protection, care and treatment of persons who are mentally ill, developmentally disabled or impaired by chronic alcoholism. (Welf. & Inst. Code, § 5001.)" (Maj. Opn. at p. 11.) The enactment's confidentiality provisions make all information and records obtained in the course of providing services under that enactment (and other specified enactments) confidential, subject to defined statutory exceptions. (Welf. & Inst. Code, §§ 5328, 4514; see also *id*., § 5328.01 et seq. [setting out additional exceptions to the general rule of confidentiality].) The enactment defines "services" broadly to cover essentially anything "directed toward the alleviation of a developmental disability [or a mental illness] or toward the social, personal, physical, or economic habilitation or rehabilitation of an individual with a developmental disability [or a mental illness]." (Welf. & Inst. Code, § 4512, subd. (b).) The majority opinion also correctly notes the legislative purpose for confidentiality is "to encourage persons with

3

mental or severe alcohol problems or developmental disabilities to seek, undergo and accept treatment, and to be candid and open in such treatment." (Maj. Opn. at p. 11.) However, the Lanterman Act as a whole must be construed to, among other things, "guarantee and protect public safety" and "protect mentally disordered persons and developmentally disabled persons from criminal acts." (Welf. & Inst. Code, § 5001, subds. (c), (g).)

The Long-Term Care Act, the majority opinion again correctly observes, applies to long-term health care facilities, including the state facilities for the mentally ill and the developmentally disabled at issue here. (Maj. Opn. at p. 7.) The enactment "authorizes [Public Health] to inspect such facilities for compliance with statutes and regulations on patient care and to issue citations to noncomplying facilities. [Citations.] [Public Health] is authorized to enter any facility for inspection . . . . When [Public Health] observes a violation of a statute or regulation, it issues a citation to the facility. [Citation.] Citations are classified according to the seriousness of the violation, and a penalty range is prescribed for each class." (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 142.) This system of inspection and citation "is to be liberally construed on behalf of the class of persons it is designed to protect," e.g., nursing care patients, the mentally ill, and the developmentally disabled, who are some of "the most vulnerable segments of our population." (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295.)

Section 1423 of the Long-Term Care Act provides, in relevant part, that "[e]ach citation shall be in writing and *shall describe with particularity the nature of the violation, including a reference to the statutory provision, standard, rule, or regulation alleged to have been violated, the particular place or area of the facility in which it occurred, as well as the amount of any proposed assessment of a civil penalty. The name of any patient jeopardized by the alleged violation shall not be specified in the citation in*

4

*order to protect the privacy of the patient.* However, at the time the licensee is served with the citation, the licensee shall also be served with a written list of each of the names of the patients alleged to have been jeopardized by the violation, that shall not be subject to disclosure as a public record. The citation shall fix the earliest feasible time for the elimination of the condition constituting the alleged violation, when appropriate." (Health & Saf. Code, § 1423, subd. (a)(2), italics added.)

Section 1424 of the enactment directs Public Health to consider "all relevant facts" in determining the amount of the civil penalty, "including, but not limited to, the following: [¶] (1) *The probability and severity of the risk that the violation presents to the patient's or resident's mental and physical condition.* [¶] (2) *The patient's or resident's medical condition.* [¶] (3) *The patient's or resident's mental condition and his or her history of mental disability or disorder.* [¶] (4) The good faith efforts exercised by the facility to prevent the violation from occurring. [¶] (5) The licensee's history of compliance with regulations." (Health & Saf. Code, § 1424, subd. (a), italics added.) This section also provides: "Relevant facts considered by [Public Health] in determining the amount of the civil penalty *shall be documented by* [*Public Health*] *on an attachment to the citation and available in the public record.*" (Health & Saf. Code, § 1424, subd. (b), italics added.)

Section 1439 of the enactment provides: "Any writing received, owned, used, or retained by [Public Health] in connection with the provisions of [the Long-Term Care Act] is a public record within the meaning of [the Public Records Act], and, as such, is open to public inspection pursuant to the provision of Sections 6253, 6256, 6257, and 6258 of the Government Code. However, the names of any persons contained in such records, except the names of duly authorized officers, employees, or agents of the state department conducting an investigation or inspection in response to a complaint filed pursuant to [the Long-Term Care Act], shall not be open to public inspection and copies

5

of such records provided for public inspection shall have such names deleted." (Health & Saf. Code, § 1439; see also *id*., § 1429, subds (a), (b) [requiring posting of class "AA" and class "A" citations "in plain view of the patients or residents in the long-term health care facility, persons visiting those patients or residents, and persons who inquire about placement in the facility," and requiring class "B" citations that have become final to be "retained by the licensee at the facility cited until the violation is corrected" and "made promptly available by the licensee for inspection or examination by any member of the public who so requests"].)

Thus, the Long-Term Care Act makes citations (containing a description of the nature of the violation) and their attachments (containing the relevant facts surrounding the violation, including the patient's or resident's medical and mental conditions, his or her history of mental disability or disorder, and the risk that the violation presents to his or her mental and physical condition) public records under the Public Records Act. The Lanterman Act, however, makes confidential, and therefore not subject to disclosure under the Public Records Act, all information obtained in the course of providing services to the mentally ill and developmentally disabled under the Lanterman Act and other specified enactments. Accordingly, unless the Long-Term Care Act's requirements that the citation contain a description of the nature of the violation and the attachment contain a statement of the relevant facts surrounding the violation can be reasonably interpreted to not require inclusion of information obtained in the course of providing services within the meaning of the Lanterman Act, the two statutory enactments conflict. I see no way to so construe the citation provisions of the Long-Term Care Act. Nor do my colleagues in the majority offer such an interpretation of these provisions. Indeed, the majority opinion acknowledges the conflict by holding that "[t]he patient's or resident's mental, physical, and medical conditions, history of mental disability or disorder, as well as the risk the violation presents to that mental and physical condition, are not disclosable . . . in light of

6

the mental health-based confidentiality provisions of the Lanterman Act." (Maj. Opn. at p. 21.)

Simply put, the Long-Term Care Act and the Lanterman Act conflict because the Long-Term Care Act requires public disclosure of information the Lanterman Act requires to remain confidential, and vice versa.

## III

### *Resolution of the Conflict*

I conclude the Long-Term Care Act's citation provisions, in addition to making citations public records, also created an exception to the Lanterman Act's exemption from disclosure under the Public Records Act.

"'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.'" (*In re Williamson* (1954) 43 Cal.2d 651, 654; see also *Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 924-925; Code Civ. Proc., § 1859 ["when a general and particular provision are inconsistent, the latter is paramount to the former"].) Moreover, "[i]t is well settled that a later statute may supersede, modify, or so affect the operation of an earlier law as to repeal the conflicting earlier law by implication. [Citations.]" (*Orange County Air Pollution Control Dist. v. Public Util. Com.* (1971) 4 Cal.3d 945, 954, fn. 8.)

In *Albertson v. Superior Court* (2001) 25 Cal.4th 796 (*Albertson*), our Supreme Court held the Legislature created "an exception to [the Lanterman Act's] general rule of confidentiality of treatment records" by a subsequent and more specific statutory enactment amending the Sexually Violent Predators Act (SVPA). (*Id.* at p. 805.) There, prior to the petitioner's release from prison, the district attorney filed a petition for commitment under the SVPA. The trial court found probable cause to believe the

7

petitioner was a sexually violent predator and set the matter for trial. Nearly a year and a half after the petitioner's initial interviews and evaluations by mental health experts, the district attorney sought an order directing him to undergo an updated mental health interview and evaluation. The district attorney also sought access to the petitioner's mental health treatment files. (*Id*. at pp. 798-800.) The trial court granted these requests. (*Id*. at pp. 800-801.) Issuing a writ of mandate directing the trial court to deny the district attorney's requests, the Court of Appeal held, as relevant here, that the trial court's order granting access to mental health treatment files violated section 5328 of the Lanterman Act. (*Id*. at p. 801.) Our Supreme Court reversed based on "newly enacted amendments to the SVPA," specifically, Welfare and Institutions Code section 6603, subdivision (c). (*Id*. at p. 803.) The court explained that this provision "sets out express authority for the updated evaluations" and "provides that '[t]hese updated or replacement evaluations shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated . . . .' [Citation.] By this language, the current provision clarifies within the SVPA an exception to [the Lanterman Act's] general rule of confidentiality of treatment records, and allows the district attorney access to treatment record information, insofar as that information is contained in an updated evaluation." (*Id*. at p. 805.)

Thus, while sections 5328 and 4514 of the Lanterman Act provide that "[i]nformation and records shall be disclosed *only* in any of the following cases" (italics added), followed by several exceptions to the general confidentiality rule (both in subsequent subdivisions within sections 5328 and 4514, and also in separate sections immediately following section 5328), none of which applies in this case, our Supreme Court made clear in *Albertson*, *supra*, 25 Cal.4th 796 that exceptions to this general rule may be found in other statutory enactments, there, the SVPA. Similarly, the Attorney General's office has issued opinions concluding that specific reporting statutes supersede,

8

and therefore create exceptions to the general confidentiality provisions of the Lanterman Act. (65 Ops.Cal.Atty.Gen. 345 (1982) [duty to report child abuse under the Child Abuse Reporting Law supersedes the confidentiality provisions of the Lanterman Act]; see also 58 Ops.Cal.Atty.Gen. 824 (1975).)

The same reasoning applies to the citation provisions of the Long-Term Care Act. These citation provisions are the more specific provisions because the Lanterman Act's confidentiality provisions, standing alone, include the citations at issue in this case, but also broadly cover any "[i]nformation and records obtained in the course of providing services" under the Lanterman Act and other specified statutory enactments. (Welf. & Inst. Code, § 5328.) The citation provisions, on the other hand, deal specifically with citations and precisely mandate the contents of these citations. As the more specific statutes, the Long-Term Care Act's citation provisions take precedence over the Lanterman Act's general confidentiality provisions.[2]

---

[2]  I am not persuaded by Public Health's argument that the Lanterman Act is the specific statute that trumps the Long-Term Care Act because the Lanterman Act pertains to a subclass of mentally ill and developmentally disabled patients, while the Long-Term Care Act applies to all patients/residents of long-term care facilities. Public Health relies on two cases I find distinguishable: *McDonald v. Conniff* (1893) 99 Cal. 386; and *In re Ward* (1964) 227 Cal.App.2d 369. The 1893 case involved an action to foreclose a lien of a street assessment. The Supreme Court held that an assessment statute making certain documents *prima facie* evidence of the regularity of the proceedings did not contravene the constitutional provision prohibiting the legislature from passing special or local laws "regulating the practice of courts of justice." The court explained it is not necessary that a law shall affect all the people of the state or concern a procedure applicable to every court action to be considered a general law. (*McDonald*, *supra*, 99 Cal. at pp. 390-391.) Thus, there were no conflicting statutes in *McDonald*.

The 1964 case involved two sentencing statutes that conflicted when applied to the defendant who was convicted of selling marijuana. One statute (former Health and Safety Code section 11531) provided that every person who sells any marijuana shall be punished by imprisonment in state prison from five years to life and shall not be eligible for parole or release until he or she has served not less than three years. Another statute

9

Moreover, like the reporting laws at issue in the Attorney General's opinions, the Long-Term Care Act's citation provisions are in essence reporting statutes that are designed to protect the patients/residents in long-term health care facilities by requiring inspection and reporting of inadequate care (via issuing citations). By posting these citations at the facilities and making them public records (with specific names removed), the information is made available to the patients/residents, their families, employees, and the general public. This informs and protects the public and patients/residents from facilities that provide inadequate treatment of patients/residents who are vulnerable and dependent upon the facilities for good care. (Health & Saf. Code, §§ 1422.5, 1422.6, 1422.7, 1429.) Thus, treating the Long-Term Care Act's citation provisions as an exception to the Lanterman Act's confidentiality rule comports with the legislative purpose of the Lanterman Act, which must be construed to "guarantee and protect public

---

(former Penal Code section 1202b) provided that for any person who was under the age of 23 years at the time of committing a felony or felonies, the court may, notwithstanding any other provision of law fixing or affecting the penalty for the felony or felonies, specify that the minimum term of imprisonment shall be six months. The Court of Appeal concluded former Penal Code section 1202b was the more specific provision that created an exception to the general sentencing rule of former Health and Safety Code section 11531 for persons under the age of 23 years at the time of committing the crime. This was because former Health and Safety Code section 11531 began with the "generic" phrase "'[e]very person,'" while former Penal Code section 1202b applied only to persons under the age of 23 years at the time of committing the crime and used the phrase "'notwithstanding any other provision of law fixing or affecting the penalty for the offense.'" (*In re Ward*, *supra*, 227 Cal.App.2d at pp. 374-375.) Here, unlike former Penal Code section 1202b, the Lanterman Act's confidentiality provisions were not made to apply *notwithstanding any other provision of law*. Indeed, these provisions have been held to be general in nature and subject to numerous exceptions, both within the Lanterman Act and outside of that enactment. (See Welf. & Inst. Code, §§ 5328, subds. (a)-(y), 5328.01 et seq.; *Albertson*, *supra*, 25 Cal.4th at p. 805.) Nor are the Long-Term Care Act's citation provisions phrased in generic terms. Instead, as already explained, they specifically mandate the content of citations.

10

safety" and "protect mentally disordered persons and developmentally disabled persons from criminal acts." (Welf. & Inst. Code, § 5001, subds. (c), (g).)

Additionally, the citation provisions of the Long-Term Care Act, enacted in 1973 (Stats. 1973, ch. 1057, § 1, pp. 2088-2095), were enacted after the confidentiality provisions of the Lanterman Act, which were originally enacted in 1972 (Stats. 1972, ch. 1058, § 2, pp. 1960-1961).[3] As mentioned, "[i]t is well settled that a later statute may supersede, modify, or so affect the operation of an earlier law as to repeal the conflicting earlier law by implication. [Citations.]" (*Orange County Air Pollution Control Dist. v. Public Util. Com.*, *supra*, 4 Cal.3d at p. 954, fn. 8.) Nor am I persuaded by Public Health's argument that the enactment, in 1980, of an exception to the Lanterman Act's confidentiality provisions (Welf. & Inst. Code, § 5328.15; Stats. 1980, ch. 695, § 1, p. 2095) makes the confidentiality provisions the later-enacted statutes simply because this exception reiterated the general rule of confidentiality before setting forth the exception.

In sum, the Long-Term Care Act makes citations and their attachments public records under the Public Records Act. (Health & Saf. Code, §§ 1423, subd. (a), 1424, subd. (b), 1439.) The Lanterman Act, prohibiting disclosure of information obtained in the course of providing services under that enactment (and other specified enactments), subject to defined statutory exceptions (Welf. & Inst. Code, §§ 5328, 4514; see also *id.*, § 5328.01 et seq.), creates an exemption from disclosure under the Public Records Act.

---

3   While Welfare and Institutions Code section 4514 was enacted in 1982 (Stats. 1982, ch. 1141, § 1, pp. 4108-4112), as mentioned in the majority opinion, this was part of a "nonsubstantive statutory division [that] kept the mentally ill (and chronically alcoholic) in the Lanterman-Petris-Short Act, and placed the developmentally disabled in the parallel companion statutory scheme of the Lanterman Developmental Disabilities Services Act; the confidentiality provisions of both acts are quite similar." (Maj. Opn. at p. 11, fn. 7.) Accordingly, the Lanterman Act's confidentiality provisions were originally enacted in 1972.

11

However, as also mentioned, this exemption must be narrowly construed.  (*County of Santa Clara v. Superior Court*, *supra*, 170 Cal.App.4th at p. 1321.)  By specifically setting forth the required contents of the citations and attachments, some of which would be confidential under the Lanterman Act, the Legislature created "within the [Long-Term Care Act] an exception to [the Lanterman Act's] general rule of confidentiality." (*Albertson*, *supra*, 25 Cal.4th at p. 805.)  This is what the trial court concluded.  I would deny the petition for writ of mandate.


                                       HOCH            , J.